# HUGHES *v.* ROWE ET AL.

No. 79–6000.  Decided November 10, 1980

PER CURIAM.

Petitioner, an inmate of the Illinois State Penitentiary, asks us to review an order dismissing his civil rights action against the respondent corrections officers and directing him to pay counsel fees of $400 for services rendered by the Attorney General of Illinois in representing the respondents in that action.

After granting a motion to dismiss the complaint for failure to state a constitutional violation, the District Court ordered petitioner to show cause why fees of $400 should not be taxed against him under 42 U. S. C. § 1988. Because he did not respond to that order, the fee award was entered.[1] A motion to reconsider was later denied on the ground that petitioner's suit was "meritless."[2] The Court of Appeals disposed of the

---

[1] The order entered by District Judge McMillen on October 18, 1978, reads as follows:

"On August 7, 1978, we ordered plaintiff to show cause within twenty (20) days thereof why defendants' attorneys' fees in the amount of $400 should not be taxed against plaintiff under 42 U. S. C. § 1988. Because plaintiff has not complied with or otherwise responded to that order, we hereby tax defendants' fees in the amount of $400 against him pursuant to 42 U. S. C. § 1988."

[2] On December 5, 1978, Judge McMillen entered the following order denying petitioner's motion for reconsideration:

"On October 18, 1978, we ordered that the defendants' attorneys fees in the amount of $400 should be taxed against the plaintiff pursuant to 42

novel question presented by petitioner by affirming the fee award in an unpublished order.[3] We now grant the motion for leave to proceed *in forma pauperis* and the petition for certiorari and reverse the judgment of the Court of Appeals.

# I

On September 20, 1977, petitioner was charged with a violation of prison regulations and placed in segregation. At a disciplinary hearing two days later, petitioner admitted that

---

U. S. C. § 1988. Plaintiff has filed a motion to reconsider said action. Plaintiff's motion to reconsider is denied and attorneys fees in the amount of $400 will be taxed against the plaintiff, as the suit was meritless."

[3] Rule 35 (c) (1) of the Circuit Rules of the United States Court of Appeals for the Seventh Circuit identifies those decisions warranting publication:

"A published opinion will be filed when the decision

"(i) establishes a new, or changes an existing, rule of law;

"(ii) involves an issue of continuing public interest;

"(iii) criticizes or questions existing law;

"(iv) constitutes a significant and nonduplicative contribution to legal literature

"(A) by a historical review of law,

"(B) by describing legislative history, or

"(C) by resolving or creating a conflict in the law;

"(v) reverses a judgment or denies enforcement of an order when the lower court or agency has published an opinion supporting the judgment or order; or

"(vi) is pursuant to an order of remand from the Supreme Court and is not rendered merely in ministerial obedience to specific directions of that Court."

When a decision does not satisfy these criteria, it is to be filed as an unpublished order. Circuit Rule 35 (c) (2). Unpublished orders may not be cited as precedent in any federal court within the Seventh Circuit. Circuit Rule 35 (b) (2) (iv).

Although petitioner's appeal was decided in an unpublished order purportedly having no precedential significance, three members of the Court of Appeals, Chief Judge Fairchild and Judges Swygert and Bauer, nonetheless voted to rehear the case en banc. Judge Swygert filed a written dissent from the order denying the petition for rehearing en banc.

he and two other inmates had consumed a homemade alcoholic beverage; his punishment was confinement to segregation for 10 days,[4] demotion to C-grade, and loss of 30 days' statutory good time.

Petitioner exhausted his administrative remedies and then filed a complaint under 42 U. S. C. § 1983 in the United States District Court for the Northern District of Illinois on the form used by prisoners who are not represented by counsel. The facts stated on the form raised two federal questions of arguable merit: (1) the decision to place petitioner in a segregation cell on September 20, 1977, was not preceded by a hearing and was not justified by any emergency or other necessity; (2) two of the officers who conducted the disciplinary hearing after petitioner had been in segregation for two days were biased against him.[5] Respondents, represented by the State Attorney General's Office, moved to dismiss the complaint, but filed no affidavits denying or explaining the facts alleged by petitioner. After allowing petitioner to file various amendments and additional papers, the District

---

[4] It is unclear from the record whether this sentence included the two days petitioner spent in segregation prior to the disciplinary hearing, or whether he was sentenced to 10 days' segregation in addition to the time already served. There apparently is also some confusion with respect to the exact sentence imposed on petitioner at the hearing. The District Court's order dismissing the complaint indicates that petitioner was sentenced to 30 days in segregation. The Court of Appeals' order, on the other hand, states that he was sentenced to 10 days in segregation. The petition for writ of certiorari and respondents' brief in opposition filed in this Court are similarly inconsistent on this point. The record seems to indicate that petitioner was sentenced to 10 days in segregation. The uncertainty with respect to petitioner's posthearing segregation is not, however, material to our decision in this case.

[5] Petitioner also alleged that respondents violated their own procedural regulations, and that it was a denial of equal protection of the laws and cruel and unusual punishment to impose a more severe sentence on him than on the other two inmates involved in the incident, since he had confessed to drinking and they had not.

Court dismissed the complaint without taking any evidence. Thereafter the fee award was made.

In its order affirming the action of the District Court, the Court of Appeals correctly noted that the Due Process Clause of the Fourteenth Amendment affords a prisoner certain minimum procedural safeguards before disciplinary action may be taken against him.[6] Because the record did not reveal a violation of those safeguards at the hearing on September 22, the Court of Appeals concluded that the complaint had been properly dismissed. However, the Court of Appeals seems to have overlooked the fact, clearly stated in petitioner's brief on appeal, that the disciplinary hearing did not take place until two days after petitioner was placed in segregation on September 20. Nothing in the papers filed on behalf of the respondents purports to justify or explain the segregation of petitioner for two days in advance of the disciplinary hearing.

## II

Petitioner's complaint, like most prisoner complaints filed in the Northern District of Illinois, was not prepared by counsel. It is settled law that the allegations of such a complaint, "however inartfully pleaded" are held "to less stringent standards than formal pleadings drafted by lawyers . . . ." *Haines* v. *Kerner,* 404 U. S. 519, 520 (1972). See also *Maclin* v. *Paulson,* 627 F. 2d 83, 86 (CA7 1980); *French* v.

---

[6] As the Court of Appeals noted:

"The Supreme Court has delineated the standard to be applied in determining whether a prisoner has been afforded his minimum due process rights. Wolff v. McDonnell, 418 U. S. 539 . . . (1974). The prisoner is entitled to (1) advance written notice of the charges against him or her; (2) an opportunity to call witnesses and present documentary evidence, provided that to do so will not jeopardize institutional safety or correctional goals, before a sufficiently impartial hearing board; (3) a written statement by the fact finder of 'the evidence relied upon and reasons for the disciplinary action taken.'"

*Heyne,* 547 F. 2d 994, 996 (CA7 1976). Such a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines, supra,* at 520–521.[7] And, of course, the allegations of the complaint are generally taken as true for purposes of a motion to dismiss. *Cruz* v. *Beto,* 405 U. S. 319, 322 (1972).

Applying these principles to petitioner's amended complaint, we conclude that all but one of its allegations were properly dismissed for failure to state a claim. Petitioner's allegations of bias and procedural irregularities in the September 22 hearing, unequal treatment, and cruel and unusual punishment, even when liberally construed, were insufficient to require any further proceedings in the District Court. We therefore affirm the dismissal of these claims.

Petitioner's allegation that he had been confined unnecessarily to segregation is of a different character. It can be construed as a contention that his confinement to segregation violated due process because it took place without a prior hearing. It is clear from the facts alleged in the amended complaint that petitioner was confined in segregation for two days before a hearing was held. Indeed, petitioner expressly stated this claim in procedural due process terms in his response to the defendants' motion to dismiss the amended complaint.[8]

---

[7] The Court reaffirmed the principles of *Haines* in *Estelle* v. *Gamble,* 429 U. S. 97, 106 (1976):

"As the Court unanimously held in *Haines* v. *Kerner,* 404 U. S. 519 (1972), a *pro se* complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers' and can only be dismissed for failure to state a claim if it appears ' "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." ' *Id.,* at 520–521, quoting *Conley* v. *Gibson,* 355 U. S. 41, 45–46 (1957)."

[8] In a document entitled, "Response to: Motion to Dismiss or For Sum-

Segregation of a prisoner without a prior hearing may violate due process if the postponement of procedural protections is not justified by apprehended emergency conditions. See *Hayes* v. *Walker*, 555 F. 2d 625, 633 (CA7), cert. denied, 434 U. S. 959 (1977). The amended complaint alleged that segregation was unnecessary in petitioner's case because his offense did not involve violence and he did not present a "clear and present danger." There is no suggestion in the record that immediate segregation was necessitated by emergency conditions. Defendants did make the unsworn assertion that petitioner was placed in segregation on "temporary investigative status," [9] but the significance of this designation is unclear and it does not, without more, dispose of petitioner's procedural due process claim. The District Court, in dismissing the amended complaint, merely concluded that temporary segre-

---

mary Judgment/& Memorandum in Support of Motion to Dismiss or For Summary Judgment," petitioner alleged:

"*Placement in Segregation:* Plaintiff was placed in Segregation on September 20, 1977, with *no* hearing what-so-ever. No reasons provided him as to *why* it was necessary to place him in segregation. *No* Resident Information Report issued him, stating he was being placed in segregation, under *investigation* status." Response, at 2 (emphasis in original).

Petitioner thereafter asserted that "[c]lassification to segregation must comply with procedural due process." *Id.*, at 4, 7. Petitioner went on to assert that his placement in segregation on September 20 was "completely unnecessary, because plaintiff posed no immediate threat to the safety and security of the institution. . . ." *Id.*, at 8. Later in the response, petitioner discussed his due process claim in detail. *Id.*, at 15–16.

[9] In their Memorandum in Support of Motion to Dismiss or for Summary Judgment, respondents asserted:

"Plaintiff's placement in segregation cellhouse on September 20, 1977 on temporary investigative status pending hearing of the resident information reports on September 22, 1977 does not rise to the level of a constitutional deprivation. No disciplinary sanctions constituting a grievous loss were imposed prior to a disciplinary hearing. The transfer of a resident from one cell to another does not trigger due process protections. *Meachum* v. *Fano*, 427 U. S. 215 . . . (1976)."

gation pending investigation was not actionable.[10]   The court cited an Illinois Department of Corrections Administrative Regulation which authorized segregation of prisoners pending investigation of disciplinary matters, where required "in the interest of institutional security and safety."[11]   In the absence of any showing that concern for institutional security and safety was the basis for immediate segregation of petitioner without a prior hearing, this regulation does not justify dismissal of petitioner's suit for failure to state a claim.

Our discussion of this claim is not intended to express any view on its merits.   We conclude merely that the amended complaint was adequate at least to require some response from the defendants, by way of affidavit or otherwise, to petitioner's claim that he was unjustifiably placed in segregation without a prior hearing.   Although petitioner's pleadings are prolix and lacking in stylistic precision, this is not a case like *Estelle v. Gamble,* 429 U. S. 97 (1976), in which a *pro se* litigant's detailed recitation of the facts reveals on its face the insufficiency of the complaint.   We cannot say with assurance that petitioner can prove no set of facts in support of his claim

---

[10] The District Court's order dismissing petitioner's complaint stated:

"Plaintiff complains that his placement in segregation between the evening of September 20 and his hearing on September 22 was 'unnecessary' because no violence was involved in the incident.   We find that his temporary placement in segregation pending the hearing, which was brought within the required 72 hour period, is not actionable.   See A. R. 804 (G), effective December 1, 1976."

[11] This regulation, Administrative Regulation § 804 (II) (G), provides, in pertinent part:

"It is recognized that incidents occur which, in the interest of institutional security and safety, require that a resident be removed from the general population and placed in a holding unit pending the completion of an investigation.   As the holding unit functions in the same manner as a segregation unit (except that single celling is not required in the holding unit), a resident must be provided with the same procedural safeguards and services as are required by this regulation relative to placements, conditions and services in a segregation unit."

entitling him to relief. *Haines* v. *Kerner,* 404 U. S., at 521. Accordingly, the Court of Appeals should have reversed the dismissal of this claim and remanded for further proceedings.[12]

---

[12] The dissenting opinion rests on the alternative and somewhat inconsistent grounds that prehearing solitary confinement was (a) proper punishment for an offense that was already adequately proved, (b) necessary in order to forestall the development of a contrived defense, and (c) harmless because petitioner subsequently received a fair hearing. The record reveals that these grounds are not sufficient to justify the dismissal of petitioner's complaint.

On the basis of petitioner's admission that he had been drinking, plus unsworn allegations in the reports of the corrections officers, the dissent concludes that petitioner was intoxicated on September 20 and that he posed a threat to prison security and safety sufficiently serious to warrant immediate segregation.

There is little doubt that some intoxicated prisoners may pose a threat to prison security justifying segregation without a hearing. The problem in this case is that the record does not establish, and the District Court did not find, that petitioner was in fact intoxicated or that his condition presented a threat to institutional security. Indeed, at no point in this litigation have the respondents asserted, by affidavit or otherwise, that petitioner was placed in segregation on September 20 because of such security concerns.

The dissent also speculates that inmates suspected of violations of prison regulations, if allowed to remain in the general prison population pending disciplinary proceedings, will fabricate alibi defenses and intimidate potential witnesses. *Post,* at 22. This danger would apparently justify automatic investigative segregation of all inmate suspects. Ironically, however, even the Administrative Regulation cited by the District Court, see n. 11, *supra,* does not purport to justify such blanket segregation. Moreover, automatic investigative segregation is particularly inappropriate for an inmate, like petitioner, who has already admitted guilt; fabrication of alibis or intimidation of witnesses seems unlikely in such a case. While investigative concerns might, in particular cases, justify prehearing segregation, nothing in the present record suggests that these concerns were at work in this case.

Either the institutional security or the investigative justification postulated by the dissent might well be dispositive had the District Court made appropriate findings. The respondents did not, however, present these justifications to the District Court and the District Court accord-

14

## III

The award of attorney's fees entered against petitioner must be vacated.

In *Christiansburg Garment Co.* v. *EEOC,* 434 U. S. 412 (1978), we held that the defendant in an action brought under Title VII of the Civil Rights Act of 1964 may recover attorney's fees from the plaintiff only if the District Court finds "that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Id.,* at 421. Although arguably a different standard might be applied in a civil rights action under 42 U. S. C. § 1983, we can perceive no reason for applying a less stringent standard. The plaintiff's action must be meritless in the sense that it is groundless or without foundation. The fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees. As we stated in *Christiansburg:*

"To take the further step of assessing attorney's fees against plaintiffs simply because they do not finally pre-

---

ingly made no such findings. The record is entirely consistent with the possibility that an inmate who admittedly had been drinking posed no threat at all to prison security and had no intent to deny the facts, but did want an opportunity to establish mitigating circumstances before being placed in solitary confinement. The dissent's emphasis upon petitioner's admission confuses the distinction, previously recognized by this Court, between the question of guilt and the question of appropriate punishment. Cf. *Morrissey* v. *Brewer,* 408 U. S. 471, 483–484 (1972).

Finally, even if the subsequent hearing accorded petitioner minimized or eliminated any compensable harm resulting from the initial denial of procedural safeguards, his constitutional claim is nonetheless actionable. *Carey* v. *Piphus,* 435 U. S. 247, 266–267 (1978). "Because the right to procedural due process is 'absolute' in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process be observed . . . the denial of procedural due process should be actionable for nominal damages without proof of actual injury." *Id.,* at 266 (footnote omitted).

vail would substantially add to the risks inhering in most litigation and would undercut the efforts of Congress to promote the vigorous enforcement of the provisions of Title VII. Hence, a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." 434 U. S., at 422.

No such finding supported the fee award in this case.

These limitations apply with special force in actions initiated by uncounseled prisoners. Faithful adherence to the principles of *Haines* v. *Kerner* dictates that attorney's fees should rarely be awarded against such plaintiffs. The fact that a prisoner's complaint, even when liberally construed, cannot survive a motion to dismiss does not, without more, entitle the defendant to attorney's fees. An unrepresented litigant should not be punished for his failure to recognize subtle factual or legal deficiencies in his claims. As the Court noted in *Christiansburg*, even if the law or the facts are somewhat questionable or unfavorable at the outset of litigation, a party may have an entirely reasonable ground for bringing suit. 434 U. S., at 422.

Despite the lower court's conclusion to the contrary, the allegations of petitioner's amended complaint are definitely not meritless in the *Christiansburg* sense. Even those allegations that were properly dismissed for failure to state a claim deserved and received the careful consideration of both the District Court and the Court of Appeals.[13] Allegations that,

---

[13] As Judge Swygert noted in his dissent from the order denying rehearing en banc, see n. 3, *supra*, the District Court dismissed petitioner's claims only after detailed consideration resulting in a seven-page opinion. According to Judge Swygert:

"It is quite evident from the detailed treatment given by the district court to the issues raised by plaintiff's complaint that the suit was not groundless or meritless. That fact is corroborated by this court's treatment of the same issues on appeal."

upon careful examination, prove legally insufficient to require a trial are not, for that reason alone, "groundless" or "without foundation" as required by *Christiansburg*.

The judgment of the Court of Appeals is affirmed in part and reversed in part and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

THE CHIEF JUSTICE would grant the petition and set the case for oral argument.

JUSTICE STEWART would affirm the judgment of the Court of Appeals insofar as it affirmed the District Court's dismissal of the petitioner's complaint. He substantially agrees, however, with what is said in Part III of the Court's *per curiam* opinion, and for those reasons would reverse the judgment insofar as it affirmed the award of attorney's fees entered against the petitioner.

JUSTICE WHITE, concurring in part and concurring in the result.

I agree with the result reached in Part II of the *per curiam* opinion. Under *Wolff* v. *McDonnell*, 418 U. S. 539 (1974), a prior hearing was required for the particular disciplinary action involved here—segregation and loss of good time. But as *Wolff* makes clear, Fourteenth Amendment procedural protections were triggered only because under state law—here prison regulations—segregation and good-time reductions could be imposed only for serious disciplinary lapses and only after a prior hearing.[1] Under these regulations, segregation

---

[1] Illinois Department of Corrections Administrative Regulations in effect at the time of this incident provided that a Program Team could act on charges of minor rule violations, but that an Adjustment Committee hearing was required on all other charges of rule violations, "including those which may result in programmatic removal from the population, demotion in grade, or loss of good time." Administrative Regulation § 804 (II)(A)(4). The regulations also provided that a resident must be in-

prior to a hearing could occur only for reasons of prison security and safety.[2]   I agree that there have been no findings that warranted dispensing with the prior hearing.

It is well to point out, however, that although petitioner sought compensatory and punitive damages, as well as declaratory relief, he had a full hearing within 48 hours of his confinement, his guilt was properly established (indeed, he admitted his conduct as he had before), and the discipline imposed on him was found to be justified.   Even if petitioner is successful in proving a due process deprivation, his damages would be limited to those flowing from postponement of a hearing for two days.   Under *Carey* v. *Piphus*, 435 U. S. 247 (1978), it is likely that only nominal damages would be awardable.

I am in accord with Part III of the Court's opinion.

JUSTICE REHNQUIST, dissenting.

In its effort to distill some vaguely tenable claim from petitioner's complaint, the Court ignores crucial admissions in

---

formed, *inter alia,* that "if found guilty of a serious rule violation [by the Adjustment Committee] and found to be a danger to the institutional community, he may be placed in segregation and/or deprived of his current grade and statutory good time credit."   § 804 (II) (B) (4).

[2] Illinois Department of Corrections Administrative Regulations authorized confinement of a resident in a holding unit pending the completion of an investigation "in the interest of institutional security and safety."   See § 804 (II) (G) (1), quoted in full in the majority opinion, *ante,* at 12, n. 11.   The regulations also authorized confinement of a resident in a holding unit in two other situations, again for security reasons. Section 804 (II) (E) (1) provided:

"Whenever it is necessary to remove a resident from the general population on an emergency basis due to serious aggressive behavior and/or for safekeeping, the shift captain and/or unit manager must authorize the placement of a resident in a holding unit until the next meeting of the Adjustment Committee, which in no case may exceed 72 hours."

Section 804 (II) (F) (1) provided:

"Whenever it is deemed necessary by the Chief Administrative Officer to

the complaint itself which fatally undermine any claim of constitutional deprivation. As I read the Court opinion, it holds that the District Court erred in dismissing petitioner's complaint solely because the complaint can be construed to allege that petitioner was placed in segregation without a prior hearing, although he was given an adequate hearing before a review board 40 hours later. The Court recognizes that petitioner admitted before the review board that he violated prison regulations by consuming homemade alcohol, *ante,* at 7–8, but fails to recognize that he had also admitted his guilt *at the time of the incident.* In his amended complaint petitioner alleged:

> "[I] was placed in segregation unnecessarily on September 20, 1977, because there was no violence involved, and I was not a 'clear and present' danger. Additionally, I had admitted to Captain C. D. Tuttle that I had been drinking." Amended Complaint 13.[1]

The complaint also reveals that petitioner has "a problem with alcohol." *Id.,* at 14.[2] In light of these admissions it is difficult to see what purpose the hearing which the Court rules may have been constitutionally required would have served. The hearing would not be held to determine if petitioner violated prison regulations; he admitted that he had when apprehended. Nor would the hearing be held to determine appropriate punishment. That hearing, before the re-

---

transfer a resident to another correctional facility for security reasons, the resident may be confined in a holding unit for not more than 72 hours. See ARs 819 and 822 on transfers."

[1] The resident information report filled out by Captain Tuttle and served on petitioner the night the incident occurred confirms that petitioner admitted to drinking at that time.

[2] The nature of this problem was elaborated in a grievance filed by petitioner two days after the review board hearing. There he stated he has "had a problem with [a]lcohol ever since I was fifteen years old, and nowhere in my past record will you find any sort of arrest that didn't involve [a]lcohol or drugs."

view board, was held 40 hours later, and the Court concedes that no matter how liberally petitioner's complaint is construed it does not state any claim concerning the conduct of that hearing or the punishment. *Ante,* at 10. The sole purpose the hearing could have served would be to determine if petitioner should have been removed from the general prison population for the short period between the occurrence of the incident at 7:30 the night of September 20 and the review board hearing held before noon on September 22.

In light of the facts admitted by petitioner, however, it is clear that he cannot state a claim against the prison officials for not holding such a hearing. The reports of the conduct of which petitioner admitted being guilty described his condition as "tipsy, speech slurred" and stated that petitioner "had all the appearance of being drunk" and "appeared to be intoxicated." In his grievance filed on September 24 petitioner again admitted that he had gotten "drunk" the night of the 20th.[3]

---

[3] The Court, *ante,* at 13, n. 12, states that our conclusion that petitioner was intoxicated rests on reports by the officers and petitioner's admission that he had been drinking. This statement overlooks the September 24 grievance filed by petitioner, wherein he reviewed what he considered the highlights of his prison career and asked "why, with all the things I had going for myself, and being so close to appearing before the Parole Board, *did I get drunk* and louse up the good record I had?" (emphasis supplied). It also overlooks that petitioner admitted being guilty of the conduct set forth in the reports which described his condition as noted in the text. Petitioner did not argue before the review board, as one of his drinking companions did, that although he had been drinking he was not intoxicated. But even more importantly, the Court's effort to distinguish between an inmate who has been drinking in violation of prison regulations and an intoxicated inmate, or an intoxicated inmate who poses a threat to prison security and safety and one who does not, places an intolerable burden on prison officials, who apparently must, at the risk of money damages, decide precisely when a drinking inmate is drunk or even how a particular inmate will react when drunk. This is completely at odds with the established rule that prison officials are accorded great deference in the discharge of their central responsibility for prison security and discipline, see *infra,* at 20.

Intoxicated inmates surely pose a serious threat to prison security and safety, and the placing of petitioner in temporary investigative status was authorized by a prison regulation providing for such action "in the interest of institutional security and safety." This Court has on several occasions stressed that " 'central to all other corrections goals is the institutional consideration of internal security within corrections facilities themselves.' " *Bell* v. *Wolfish,* 441 U. S. 520, 546–547 (1979) (quoting *Pell* v. *Procunier,* 417 U. S. 817, 823 (1974)). See *Jones* v. *North Carolina Prisoners' Labor Union,* 433 U. S. 119, 129 (1977); *Procunier* v. *Martinez,* 416 U. S. 396, 412 (1974). "Prison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel . . . ." *Bell* v. *Wolfish, supra,* at 547. This Court has also repeatedly recognized that the judiciary, "ill-equipped" to deal with "complex and difficult" problems of running a prison, must accord the decisions of prison officials great deference. See, *e. g., Jones* v. *North Carolina Prisoners' Labor Union, supra,* at 126; *Procunier* v. *Martinez, supra,* at 405. This rule applies with its greatest force when prison officials act to preserve the central goal of institutional discipline. "Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell* v. *Wolfish, supra,* at 547. Against this well-established background, and with petitioner's admitted violation of prison regulations by consuming homemade alcohol, it is clear that the prison officials acted within their discretion in removing petitioner from the general prison population. Even the Court of Appeals authority relied upon by the Court recognized that claims such as the present one must be based on allegations of "bad faith" or "mere pretext." *Hayes* v. *Walker,* 555 F. 2d 625, 633 (CA7 1977) (quoting *La Batt* v. *Twomey,* 513 F. 2d 641, 647 (CA7 1975)). Because petitioner has admitted to being intoxicated, however, it is clear that he cannot claim

the prison officials acted out of bad faith or on mere pretext. Their decision to remove him from the general prison population was "rationally related to the reasonable, indeed to the central, objectives of prison administration," *Jones* v. *North Carolina Prisoners' Labor Union, supra,* at 129.

Indeed, it is difficult to envision exactly how an intoxicated inmate would participate in any meaningful way in a hearing held immediately after the drinking incident. A strong argument could certainly be advanced that it would have been a violation of petitioner's rights to hold a hearing when he was, as he admitted, drunk.

This case is thus like *Codd* v. *Velger,* 429 U. S. 624 (1977), where we held that no constitutional violation occurred when an untenured employee was discharged without a hearing. No hearing was required to permit the employee to clear his name, since he did not dispute the truth of the allegedly stigmatizing reason for the discharge. Here the case is even stronger, since petitioner not only does not contend he was innocent of any violation but also admitted his guilt at the time of the incident. In *Codd* no hearing was required on whether the discharge was justified in light of the employee's conduct because the employee had no property interest in continued employment. So, too, here no hearing was required on whether removal from the general prison population pending convening of the review board was justified, since this decision is within the discretion of prison officials and, in view of petitioner's admissions, no abuse of discretion can be shown.[4]

---

[4] The Court's citation of *Morrissey* v. *Brewer,* 408 U. S. 471 (1972), and *Carey* v. *Piphus,* 435 U. S. 247 (1978), begs the question whether a hearing prior to the review board hearing was required in this case. In both of these cases the Court held that a hearing was generally required *prior* to the deprivations involved, so that even if the deprivations were later found to have been justified, a constitutional violation occurred if no prior hearing had been held. Here, however, the Court recognizes that "appropriate findings" by the District Court concerning petitioner's intoxication or investigative concerns would be dispositive, presumably

Even if petitioner had not represented a threat to prison security himself, his removal from the general prison population for a brief period [5] was fully justified in order to protect the integrity of the later hearing before the review board. Permitting inmates to return to the general prison population following a serious breach of prison discipline or violation of prison rules poses difficulties in terms of alibi construction and witness intimidation. The problems were certainly present in this case, where one of three inmates involved in a single incident admitted the charges but the other two denied them. The argument that such investigative justifications cannot outweigh the burden imposed on an innocent or possibly innocent inmate, whatever its merit in other cases, is of course not applicable in this case where petitioner has admitted and continues to admit his guilt.

Nothing in the foregoing detracts from the rule of *Haines* v. *Kerner,* 404 U. S. 519 (1972), concerning the liberality with which *pro se* inmate complaints are to be read, since the complaint itself contains the admission of guilt which undermines any colorable claim. I would also note that petitioner filed his original and amended complaints on forms designed to make it easier for *pro se* inmates to articulate their claims. Such forms should make the problem of *Haines* v. *Kerner* recur less frequently by isolating the relevant information for the district court judge. The Court notes that the District Court gave petitioner's complaint "careful consideration," and Judge Swygert below argued that "it is quite evi-

---

because they would indicate no hearing was required. Thus so far as is discernible the Court's reasoning is not the lack of hearing before confinement, but the fact of possible *wrongful* confinement without a prior hearing. Findings are not necessary when petitioner's own admissions conclusively undermine any possible claim that the prison officials acted in bad faith or on mere pretext.

[5] Prison regulations permit segregation on temporary investigative status for no more than 72 hours; petitioner had his review board hearing within 40 hours of the incident.

dent from the detailed treatment given by the [D]istrict [C]ourt to the issues . . . that the suit was not groundless or meritless." It is odd, however, to reverse a District Court for spending considerable time and effort before concluding that a complaint was meritless. The fact that the District Court carefully examined petitioner's complaint for any possible claim before dismissing it is hardly evidence that a colorable claim must exist. Quite the contrary, it is a strong indication that no claim could be found no matter how deeply the District Court probed.

The award of attorney's fees was entirely proper in this case. The District Court expressly found that petitioner's suit was meritless in response to respondents' motion, which was based on *Christiansburg Garment Co.* v. *EEOC,* 434 U. S. 412 (1978), and cited that case extensively. It is clear, therefore, that the District Court was using "meritless" as that term was understood in *Christiansburg, supra,* at 421 ("the term 'meritless' is to be understood as meaning groundless or without foundation, rather than simply that the plaintiff has ultimately lost his case").

The decision whether to award attorney's fees under 42 U. S. C. § 1988 is committed to the discretion of the district courts, who are intimately familiar with the course of the litigation. Like the Court of Appeals for the Seventh Circuit, I cannot say that the District Court abused its discretion in awarding attorney's fees in this case. In light of petitioner's own admissions it was clear from the outset that he could state no cognizable claim. This is not a case, such as was suggested in *Christiansburg, supra,* at 422, where the claim appeared meritorious at the outset and only later was refuted by facts which emerged on discovery or at trial. The decisive facts were stated in the complaint and they were not merely "questionable" or "unfavorable," as the Court suggests, *ante,* at 15; they were dispositive.