922 F.2d 836
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
John William TAYLOR, Plaintiff-Appellant,
and
Wayne Darnell Potter, James Brown, Thomas Arrington, Plaintiffs,
v.
Fred JORDAN, Commissioner of Corrections, Robert A.
Harleston, Warden, Kathleen Green, Assistant Warden, Mrs.
Powell, Classification Adm. Seg. Board, Mr. Bozman,
Classification Counselor H.U. # 4, R. Turkington, CO II
Internal Investigator, H. Ward, Jr., CO II Internal
Investigator, W. Hines, Sergeant H.U. # 6; R. Breeden,
Officer Basil, D. Evans, CO II, A. Gumpman, CO II, Officer
Laird, CO II, R. Wells, CO II, T. Long, CO II, M. King,
Lieutenant H.U. # 4, Captain Edwards, Maryland State Police
Investigator, Susan Donohue; Landon, CO II, Defendants-Appellees.
 No. 90-6872.
 United States Court of Appeals, Fourth Circuit.
 Submitted Sept. 28, 1990.
Decided Jan. 2, 1991.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Frederic N. Smalkin, District Judge. (CA-89-2643-S)
 John William Taylor, appellant pro se.
 Glen William Bell, Assistant Attorney General, Baltimore, Md., for appellees.
 D.Md.
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED.
 Before MURNAGHAN, SPROUSE and CHAPMAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 John William Taylor appeals from the district court's order dismissing as to some defendants and granting summary judgment as to those who so moved, in his claims filed pursuant to 42 U.S.C. Sec. 1983 and the fourteenth, eighth, and first amendments. Our review of the record and the district court's opinion discloses that the appeal with respect to the eighth and first amendment claims is without merit. Accordingly, we affirm on the reasoning of the district court as to these issues. Taylor v. Johnson, CA-89-2643-S (D.Md. July 20, 1990). For the reasons set forth below, we vacate and remand with respect to the fourteenth amendment due process claim.
 
 
 2
 Taylor is an inmate at the Eastern Correctional Institution in Maryland. On June 23, 1989, he was taken out of the general population in the prison and placed on administrative segregation pending the outcome of a criminal investigation. On June 27, he received an initial hearing before the classification team. Appellant contends (and it is undisputed) that at the initial hearing, neither appellant nor the classification board knew the reasons for the administrative segregation at that time. The next day, appellant was given a "Notice of Assignment to Administrative Segregation." The notice indicated the reasons for assignment were (1) reason to believe that he was a threat to the security of the institution, and/or inmates, and/or staff, and (2) a pending criminal investigation.
 
 
 3
 On July 3, 1989, Taylor was informed by Warden Harleston of the precise nature of the investigation. Namely, an investigation was being conducted as to the accuracy of an anonymous note, sent to the warden, that Taylor was involved in a drug and sexual relationship with one of the prison guards. Taylor was released upon termination of the investigation on July 26, 1989, after no basis was found for the allegations in the anonymous note.
 
 
 4
 The liberty interests protected by the due process clause of the fourteenth amendment may arise from the clause itself or from the laws of the states. Meachum v. Fano, 427 U.S. 215, 223-27 (1976). When the state imposes limits on discretion, it creates a liberty interest which is protected by the due process clause regardless of whether the limits imposed stem from statute, rule, or regulation. Wright v. Enomoto, 462 F.Supp. 397, 402 (N.D.Cal.1976), aff'd, 434 U.S. 1052 (1978).
 
 
 5
 A prison regulation creates a protected liberty interest where it imposes "substantive limitations on official discretion," Olim v. Wakinekona, 461 U.S. 238, 249 (1983), by using "language of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will,' or 'must' be employed, ... and that administrative segregation will not occur absent specified substantive predicates." Hewitt v. Helms, 459 U.S. 460, 471-72 (1983). The regulation at issue here is Division of Correction Regulation (DCR) 110-19, which establishes policy and procedure for the use of administrative segregation in the state's correctional institutions. To the extent that this regulation creates a liberty interest, denial of such liberty without process is protected by the due process clause.
 
 
 6
 This court has previously considered the provisions of DCR 110-19 in Vandiver v. Haunbaker, No. 89-6238 (4th Cir. Aug. 24, 1984) (unpublished). It concluded that the policy and procedure outlined in the regulations did create a liberty interest. In so finding, the court recognized the mandatory language used and the specific procedures to be followed by prison officials when assigning prisoners to administrative segregation.*
 
 
 7
 Having concluded that a liberty interest is implicated in this case, we must now determine what process appellant was entitled to after being placed in administrative segregation. This court recently held that minimum due process is determined by the constitution rather than the statutory or regulatory provisions at issue. In other words, the state was not required to follow its own state-created procedures. Riccio v. County of Fairfax, Va., 907 F.2d 1459 (4th Cir.1990).
 
 
 8
 In the prison context, the Supreme Court in Helms held that "[a]n inmate must merely receive some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation." 459 U.S. at 476. The case elaborated in a footnote that notice must occur "within a reasonable time following an inmate's transfer, taking into account the relatively insubstantial private interest at stake and the traditionally broad discretion of prison officials." Id. at 476, n. 8.
 
 
 9
 In this case, Taylor was not given notice of the reason for his assignment to administrative segregation until one day after his initial hearing. Furthermore, no one at that hearing had any idea why he was so placed. The regulations provide for review of administrative segregation cases every 30 days or upon request of the warden or other appropriate staff. (DCR 110-19, V. 7. a). However, appellant's case was not reviewed until the full thirty days had elapsed. The net result was that appellant was not given an opportunity to be heard on the reason for his assignment to administrative segregation until 34 days after he had been so placed. The timing of the notice was not reasonable because it prevented appellant from presenting his side of the case at the initial hearing before the classification team. Further, the Supreme Court has held that "[s]egregation of a prisoner without a prior hearing may violate due process if the postponement of procedural protection is not justified by apprehended emergency conditions." Hughes v. Rowe, 449 U.S. 5, 11 (1980). No such emergency conditions appear on the face of the record.
 
 
 10
 The notice that appellant was finally given also raises important due process considerations. It simply stated that he was under criminal investigation. Even if he knew this much before the initial hearing, it would probably be insufficient information to respond. Some amount of specificity would be necessary to insure a meaningful opportunity to be heard on the issue of whether probable cause existed to continue the investigation. See Helms, 459 U.S. at 476-477. This is especially true when, as here, even the board reviewing appellant's status was unaware of the circumstances surrounding his placement.
 
 
 11
 The district court emphasized the fact that appellant's situation would have changed little, if at all, had he been given proper notice. However, we disagree that due process deprivations may be so easily dismissed. "[T]he right to procedural due process is 'absolute' in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process be observed...." Carey v. Piphus, 435 U.S. 247, 266 (1978). The net result is that appellant may be entitled to relief regardless of whether administrative segregation was, in fact, appropriate in his case.
 
 
 12
 This Court has held that although the de minimis nature of a constitutional violation may affect the amount of damages, it may not limit the right of action. Pritchard v. Perry, 508 F.2d 423 (4th Cir.1975). Thus, when procedural due process rights are denied, nominal damages may be presumed. Carey, 435 U.S. at 266; Burt v. Abel, 585 F.2d 613 (4th Cir.1978) (interpreting Carey ). If the district court, on remand, finds that Taylor's due process rights were violated, it may award nominal damages regardless of whether he is able to prove actual injury.
 
 
 13
 The case is remanded for further proceedings with regard to the fourteenth amendment due process claim. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 
 14
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED.
 
 
 
 *
 The exact wording of DCR 110-19 has undergone some changes since Vandiver was decided. The relevant provisions of the regulations in their present form are as follows:
 
 
 V
 Policy:
 It is the policy of the Division of Correction to utilize administrative segregation when an inmate requires close supervision and segregation from the general inmate population.... Administrative segregation may be used to ensure the safety and security of the institution....
 VI. Procedure
 
 
 A
 The procedure outlined below shall be used in placing inmates on administrative segregation
 * * *
 
 
 [2]
 Administrative segregation is to be used for custody and control purposes and not for punitive reasons. Administrative segregation shall be used for reasons such as:
 a. To prevent escapes, where reasons exists to believe the inmate to be an escape risk.
 b. When an inmate is under sentence of death, where such housing is deemed necessary.
 c. When reasons exists to believe an inmate is dangerous to the security of the institution, and/or inmates, and/or staff.
 
 
 [3]
 Notification
 a. Within forty-eight (48) hours after placement on administrative segregation, the inmate shall be provided written notice specifying the reason for same....
 
 
 [4]
 Disposition at initial hearing
 a. Within ninety-six (96) hours after placement on administrative segregation, the inmate shall be seen by the classification team and given the opportunity to be heard as to whether or not he/she should be continued in this status.