**Elroy L. WABASHA, Appellant,**

v.

**Jim SMITH, Lynn Delano, Doug Wynia, Karen Stacey, Michael B. Smith, M. Vonteti, Appellees.**

No. 90–5573.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 18, 1991.

Filed Feb. 7, 1992.

Rehearing Denied March 9, 1992.

John Schlimgen, Sioux Falls, S.D., argued, for appellant.

Frank Geaghan, Asst. Atty. Gen., Pierre, S.D., argued, for appellees.

Before BEAM, Circuit Judge, HEANEY, Senior Circuit Judge, and LOKEN, Circuit Judge.

PER CURIAM.

Elroy L. Wabasha, a South Dakota inmate, appeals a final judgment of the district court[1] sua sponte dismissing prior to

service his 42 U.S.C. § 1983 complaint, which was filed in forma pauperis under 28 U.S.C. § 1915(a). Upon careful review of the record, we conclude that the district court committed no error in dismissing the complaint. Therefore, we affirm.

HEANEY, Senior Circuit Judge, dissenting.

I respectfully dissent. It is plain from the opinion accompanying the district court's sua sponte dismissal of Wabasha's in forma pauperis complaint that the court equated the standard for frivolousness under 28 U.S.C. § 1915(d) with the standard for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The Supreme Court expressly rejected this practice in *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). As the Court noted, "[w]hen a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal on Rule 12(b)(6) grounds is appropriate, but dismissal on the basis of frivolousness is not." *Id.* at 328, 109 S.Ct. at 1833. Under section 1915(d), a court may sua sponte dismiss a complaint as frivolous only if the complaint "lacks an arguable basis either in law or in fact." *Id.* at 325, 109 S.Ct. at 1831.

The reason for the distinction between Rule 12(b)(6) and section 1915(d) dismissals is the absence under section 1915(d) of the procedural protections afforded paying plaintiffs under Rule 12(b)(6). Under Rule 12(b)(6), a plaintiff with an arguable claim usually receives notice of a pending motion to dismiss for failure to state a claim and the legal theory underlying it, and an opportunity to amend the complaint before the court rules on the motion. *Id.* at 329, 109 S.Ct. at 1833–34. Sua sponte dismissals under section 1915(d) provide indigent litigants with no such procedural protections.

---

1. The Honorable Fred J. Nichol, Senior United States District Judge for the District of South Dakota.

The goal of the in forma pauperis statute is " 'to assure equality of consideration for all litigants.' " *Id.* at 329, 109 S.Ct. at 1834 (quoting *Coppedge v. United States,* 369 U.S. 438, 447, 82 S.Ct. 917, 922, 8 L.Ed.2d 21 (1962)). Applying the more lenient frivolousness standard to in forma pauperis complaints simply gives indigent litigants opportunities for responsive pleadings "commensurate to the opportunities accorded similarly situated paying plaintiffs" under Rule 12(b)(6). *Id.* 490 U.S. at 330, 109 S.Ct. at 1834.

While the Supreme Court has not addressed whether and under what circumstances Rule 12(b)(6) permits sua sponte dismissals, *see id.* at 329 n. 8, 109 S.Ct. at 1834 n. 8, this court has: "A complaint can be dismissed prior to service of process only if it is frivolous under 28 U.S.C. § 1915(d)." *Freeman v. Abdullah,* 925 F.2d 266, 267 (8th Cir.1991). Accordingly, the district court properly dismissed Wabasha's complaint only if his claims involve an indisputably meritless legal theory or clearly baseless factual contentions. *See Neitzke,* 490 U.S. at 327, 109 S.Ct. at 1832–33.

Here, the district court stated:

> [U]nless Mr. Wabasha is entitled to some liberty interest which is granted by the statutes or regulations of South Dakota, he has no interest for due process to attach to. However, because Mr. Wabasha was given all the due process he is entitled to in a prison disciplinary hearing, it will not be necessary to address the question of whether South Dakota has created some liberty interest in remaining in the general prison population or in good time credits.

*Wabasha v. Smith,* Civ. No. 90–4110, mem. op. at 2–3 (D.S.D. July 24, 1990). The district court thus dismissed Wabasha's complaint based on a dispositive issue of law, the constitutional adequacy of the prison disciplinary hearing procedure. This is the standard for failure to state a claim under Rule 12(b)(6). Unless Wabasha's complaint also meets the frivolousness standard of section 1915(d), however, the district court's sua sponte dismissal

was inappropriate. *See Freeman,* 925 F.2d at 267.

Wabasha's pro se complaint, albeit inartfully pleaded, does not lack an arguable basis either in law or fact. The complaint alleges that Wabasha's placement in a brightly-lit detention cell from August 7, 1989 until his disciplinary hearing on August 15, 1989 violated his civil rights. Although the due process clause itself does not independently protect prison inmates from arbitrary transfers to administrative segregation, *Hewitt v. Helms,* 459 U.S. 460, 468, 103 S.Ct. 864, 869–70, 74 L.Ed.2d 675 (1983), a state may, by statute or through prison rules or regulations, create a protected liberty interest in remaining in the general prison population. *Id.* at 469–72, 103 S.Ct. at 870–72; *Albers v. Ralston,* 665 F.2d 812, 815–16 (8th Cir.1981). Where such state enactments combine explicitly mandatory language with specific substantive predicates absent which administrative segregation will not occur, a liberty interest protected by the due process clause arises. *See Hewitt,* 459 U.S. at 471–72, 103 S.Ct. at 871–72.

The "Notice of Violation of Prohibited Act" served on Wabasha the day after he was placed in detention contains the following language under the heading *"RIGHTS"*:

> You are entitled to remain in the general population pending your hearing unless the Officer–In–Charge determines that you present a threat to the security or discipline of the institution. Should you be placed on detention your status must be reviewed and a written statement provided to you within 24 hours as to whether you must remain on detention until your hearing.

It is at least arguable that this language gives prisoners an expectation of freedom from administrative segregation pending a hearing. The notice states that detention is warranted only if the officer in charge determines that the inmate presents a threat to institutional security or discipline, and may be continued only if mandatory review and notice procedures are followed.

The Supreme Court in *Hewitt* found that similar language in Pennsylvania statutes and prison regulations created a protected liberty interest in remaining in the general prison population. *See id.* at 470–72 & n. 6, 103 S.Ct. at 870–72 & n. 6.[1] Similarly, in *Bills v. Henderson,* 631 F.2d 1287 (6th Cir.1980), the Sixth Circuit found that Tennessee prison guidelines created a protected liberty interest in freedom from administrative segregation absent certain findings. *Id.* at 1291–94.[2] Given the similarity of the relevant language here to that analyzed in *Hewitt* and *Bills,* it does not appear beyond doubt that Wabasha "can prove no set of facts in support of his claim which would entitle him to relief." *See Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972) (articulating standard for dismissal of pro se complaints). Wabasha's complaint thus raises an arguable question of law: whether South Dakota prison rules create a protected liberty interest in remaining in the general prison population pending a disciplinary hearing.

The district court concluded that it need not determine whether South Dakota statutes or prison regulations created a liberty interest in remaining in the general prison population. The district court based its conclusion on the adequacy of the procedures followed at Wabasha's disciplinary hearing. The process due an inmate in a prison disciplinary proceeding, however, is not coextensive with that due an inmate facing administrative segregation when state prison regulations create a protected liberty interest in remaining in the general prison population.

An inmate facing discipline for a prison rule violation is entitled to written notice of the claimed violation in advance of the hearing, a written statement of factfindings as to the evidence relied upon and the reason for disciplinary action taken, and the opportunity to call witnesses and present documentary evidence in his defense if doing so is not unduly hazardous to institutional safety or correctional goals. *Wolff v. McDonnell,* 418 U.S. 539, 563–66, 94 S.Ct. 2963, 2978–80, 41 L.Ed.2d 935 (1974). In contrast, an inmate facing a transfer to administrative segregation is entitled to some notice of the charges against him, an opportunity to present his views orally or in writing to the prison official charged with deciding to make the transfer, and review by the decisionmaker of the charges and available evidence against the inmate within a reasonable time following the transfer. *Hewitt,* 459 U.S. at 476, 103 S.Ct. at 873–74.

Wabasha's complaint suggests that his transfer may have lacked one of the procedural safeguards *Hewitt* requires. According to the complaint, Wabasha received no meaningful opportunity to present his views to the prison official who reviewed his detention status and ordered it continued until the time of the disciplinary hearing. Wabasha was placed in detention on August 7, 1989. He received the "Notice

---

1. A Pennsylvania statute provided:

    An inmate may be temporarily confined to Close or Maximum Administrative Custody in an investigative status upon approval of the officer in charge of the institution where it has been determined that there is a threat of a serious disturbance, or a serious threat to the individual or others. The inmate shall be notified in writing as soon as possible that he is under investigation and that he will receive a hearing if any disciplinary action is being considered after the investigation is completed. An investigation shall begin immediately to determine whether or not a behavior violation has occurred. If no behavior violation has occurred, the inmate must be released as soon as the reason for the security concern has abated but in all cases within ten days.

    37 Pa.Code § 95.104(b)(3) (1978), *quoted in Hewitt,* 459 U.S. at 470 n. 6, 103 S.Ct. at 871 n. 6.

2. A Tennessee prison rule stated:

    Administrative Segregation will be implemented by transferral of the inmate to the adjustment center for an indeterminate period of time. The purpose of administrative segregation is to provide a place of maximum custody to protect an individual, others, and to promote and maintain order. Administrative segregation is recommended for those men with serious problems of maladjustment, mental illness or sexual abnormality to the degree that their safety or the safety of others is threatened in their normal day to day station.

    *Adult Service Policies and Procedures Manual of the Department of Correction,* Rule 4.602, *quoted in Bills,* 631 F.2d at 1292.

of Violation of Prohibited Act" on August 8, 1989. Also on August 8, 1989, Sergeant Doug Wynia reviewed Wabasha's detention status and continued it until the date of his disciplinary hearing. On August 9, 1989, Wabasha acknowledged receipt of the violation notice, returned it to the prison disciplinary office marked "not guilty," and requested certain witnesses at his hearing. Wabasha then remained in administrative detention until August 16, 1989, the day after his disciplinary hearing.

If the complaint's chronology is correct, Sergeant Wynia reviewed and extended Wabasha's detention status before Wabasha was allowed to present any written or oral statement regarding the transfer decision. According to the complaint, Wabasha spent eight days in administrative segregation before a decisionmaker reviewed his detention status in light of his denial of the charged violation.

Wabasha's complaint thus raises an arguable question of fact: whether Wabasha received even the informal procedure prescribed in *Hewitt* to satisfy the "minimum requirements" of the due process clause in connection with a transfer to administrative segregation. *See id.* at 472, 476, 103 S.Ct. at 871–72, 873–74. If he did not, the procedural safeguards employed in the subsequent disciplinary hearing would not remedy the initial denial of due process. In a similar case before the Supreme Court in a similar posture, the Court noted:

> [E]ven if the subsequent hearing accorded petitioner minimized or eliminated any compensable harm resulting from the initial denial of procedural safeguards, his constitutional claim is nonetheless actionable.... "Because the right to procedural due process is 'absolute' in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process be observed ... the denial of procedural due process should be actionable for nominal damages without proof of actual injury." ...

*Hughes v. Rowe,* 449 U.S. 5, 13 n. 12, 101 S.Ct. 173, 177 n. 12, 66 L.Ed.2d 163 (1980)

(quoting *Carey v. Piphus,* 435 U.S. 247, 266–67, 98 S.Ct. 1042, 1053–54, 55 L.Ed.2d 252 (1978) (footnote and citations omitted)).

Although Wabasha's claims may prove to be properly resolved against him based on responsive pleadings by appellees, his complaint presents neither an indisputably meritless legal theory nor clearly baseless factual contentions. Because I do not believe that Wabasha's complaint lacks an arguable basis either in law or fact, I would remand the case to the district court with instructions requiring the defendants to answer the complaint.