**Henry B. FOLDEN and Jean Folden, husband and wife, dba Crestwood Convalescent Center, et al., Plaintiffs–Appellants–Cross–Appellees,**

v.

**WASHINGTON STATE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, Defendant–Appellee–Cross–Appellant.**

**Nos. 90–35397, 90–35475.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 6, 1991.

Decided Dec. 11, 1992.

---

Thomas H. Grimm and John F. Sullivan, Inslee, Best, Doezie & Ryder, Bellevue, WA, for plaintiffs-appellants-cross-appellees.

Charles A. Miller and Mark H. Lynch, Special Asst. Attys. Gen., DC, for defendant-appellee-cross-appellant.

Before: WRIGHT, HUG and LEAVY, Circuit Judges.

HUG, Circuit Judge:

This case concerns the adequacy of payments to facilities that have contracted with the Washington Department of Social and Health Services to provide nursing home care under the state plans in effect since 1981. The owners of 14 such facilities brought this class action, contesting

the adequacy of the state payments under the state plans and contending that they do not meet the federal requirements under the Medicaid Provisions of the Social Security Act, more particularly, the provisions of the amendment to that statute known as the Boren Amendment. In a thorough and carefully analyzed opinion, the district court found that the state plans, as administered by the Washington State officials, met the procedural requirements of the Boren Amendment and were reasonable and adequate to meet the costs, which must be incurred by efficiently and economically operated facilities, as required by that federal standard. We affirm essentially for the reasons expressed in the district court opinion.

Federal jurisdiction in the district court was based upon 28 U.S.C. § 1331 (1988). The jurisdiction in this court is based on 28 U.S.C. § 1291 (1988).

The issues presented in this appeal are: (1) whether the state plans, as administered, complied with the procedural fact-finding requirement of the Boren Amendment; (2) whether the State's Medicaid reimbursement rates for nursing homes satisfy the Boren Amendment's substantive requirement that the State's payments to Medicaid providers are reasonable and adequate to meet the costs which must be incurred by "efficiently and economically operated facilities"; (3) whether the amended state regulation concerning the scope of field audits was invalid because it was in violation of the Washington statute concerning publication of audit rules; (4) whether the appellees are entitled to attorneys' fees pursuant to 42 U.S.C. § 1988 (1988).

The facts and procedural posture of this case are carefully set out in the district court's published opinion, 744 F.Supp. 1507 (W.D.Wash.1990), to which we refer.

## I.

The Boren Amendment, which was passed on October 1, 1980, is an amendment to the Social Security Act that provides for Medicaid ("Medicaid Act"). The Boren Amendment is codified as 42 U.S.C. § 1396a(a)(13)(A) (1988). Prior to the adoption of the Boren Amendment, the Medicaid Act required payment to nursing homes "on a reasonable cost related basis." 42 U.S.C. § 1396a(a)(13)(E) (1976). This standard obligated the states to pay nursing homes for whatever reasonable costs the facilities incurred in providing care to Medicaid recipients. The Boren Amendment was enacted as a part of the Omnibus Reconciliation Act of 1980, Pub.L. No. 96–499, § 8962(a), 94 Stat. 2599 (1980). This was in response to concerns that the prior standard for reimbursement under Medicaid did not give sufficient authority to the states to control the continuing increase in nursing home costs. *See* Senate Comm. on the Budget, 96th Cong., 2d Sess., *Reconciliation (S. 2885) and Special Rules for Its Consideration* 94–95 (Comm.Print 1980); *West Virginia Univ. Hosps., Inc. v. Casey*, 885 F.2d 11, 23 (3d Cir.1989), *cert. denied*, 496 U.S. 936, 110 S.Ct. 3213, 110 L.Ed.2d 661 (1990).

The change was from reimbursement of all reasonable costs to only those costs that "must be incurred by efficiently and economically operated facilities" to provide the care that is required under federal and state quality standards. This permitted states to alter their plans for the purpose of encouraging providers to contain the costs of health care services and allowed states to accommodate the reductions in the amount of funds that the federal government would pay to the states under the Medicaid program. *Wisconsin Hosp. Ass'n v. Reivitz*, 733 F.2d 1226, 1228 (7th Cir.1984). The Boren Amendment was designed to give states greater flexibility in calculating reasonable costs and in containing the continuing escalation of those costs. The Boren Amendment allows the states to adopt a "prospective" rate-setting system, which sets out a predetermined rate that the provider will receive and, thus, encourages the provider to meet that rate or to absorb the loss if the provider's actual costs exceed that rate. The State of Washington has adopted a rather complex and detailed prospective rate-setting system.

This is detailed in the district court's opinion. 744 F.Supp. at 1511–13.

Each state participating in the Medicaid program is required to have state plans that must be approved by the Secretary of the U.S. Department of Health and Human Services through the Health Care Financing Administration ("HCFA"). 42 U.S.C. § 1396a. The Boren Amendment requires that, in seeking reimbursement for Medicaid services, each state make "assurances" satisfactory to the Secretary of Health and Human Services that the rates are in accordance with the standard of the Boren Amendment. These assurances are to be based on "findings" that the state has made. The findings are not submitted to the agency but merely form the basis for the assurances that are submitted. The only procedural requirement of the Boren Amendment is that the state provide assurances and that those assurances be based upon findings.

█ The appellants contend that the State has failed to make the requisite findings to support the assurances given to the federal agency. The district court correctly noted that the procedural requirements of the federal regulation are satisfied if the state agency has engaged in a bona fide fact-finding process and the assurances to the federal agency are based upon its findings. 744 F.Supp. at 1532. The district court noted that the states are free to create their own methods of arriving at the required findings and that the finding process does not require any special studies or written findings. It is sufficient if the state agency has considered, on the basis of some reasonably principled analysis, whether its payment rates meet the substantive requirements of the Boren Amendment. *Id.*

█ The appellants rely upon a statement in *Amisub (PSL), Inc. v. Colorado Dep't of Social Servs.*, 879 F.2d 789, 796 (10th Cir.1989), *cert. denied*, 496 U.S. 935, 110 S.Ct. 3212, 110 L.Ed.2d 660 (1990). The court stated:

> The plain language of federal Medicaid law mandates the State Medicaid Agency, *at a minimum*, to make "findings" which identify and determine (1) efficiently and economically operated [facilities]; (2) the costs that must be incurred by such [facilities]; and, (3) payment rates which are reasonable and adequate to meet the reasonable costs of the state's efficiently and economically operated [facilities].

879 F.2d at 796 (emphasis in original). The appellants' contend that the State must define what is an "economically and efficiently operated facility." In effect, the appellants contend that the State is required to set up a model of an efficiently and economically operated facility and then match the cost of all facilities against that model. As the district court noted, this is neither a requirement of the Boren Amendment nor a requirement of the *Amisub* opinion. 744 F.Supp. at 1532.

The statutory requirement of the Boren Amendment is that state findings and assurances set out that the rates are "reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities...." 42 U.S.C. § 1396a(a)(13)(A). The HCFA has developed regulations to implement the Boren Amendment. The regulations require the state Medicaid agency to make a finding that the

> Medicaid agency pays for inpatient hospital services and long-term care facility services through the use of rates that are reasonable and adequate to meet the costs that must be incurred by efficiently and economically operated providers to provide services in conformity with applicable State and Federal laws, regulations, and quality and safety standards.

42 C.F.R. § 447.253(b)(1).

This does not mean that a model of an economically operated facility must be established but, instead, that the reimbursable costs are to be those that meet the standards of efficiently and economically operated facilities. The states are left considerable latitude in how to determine what the costs are that "must be incurred by efficiently and economically operated facilities." As the district court correctly noted, the "HCFA has specifically rejected the

suggestion that states should be required to define efficiently and economically operated facilities, because 'the State's methods and standards implicitly act as the State's definition of an efficiently and economically operated facility.' " 744 F.Supp. at 1532 (citing 48 Fed.Reg. 56049 (Dec. 19, 1983)).

The State of Washington has not chosen to set up a model of an efficiently and economically operated facility; instead, it has chosen through statutes and regulations to adopt a different method of determining how that standard can be met. As the district court correctly noted:

> Under Washington's Medicaid statute, the identification of efficiently and economically operated facilities is closely tied to, and is part of, the rate-setting process. Under RCW 74.46, these are not two separate processes, but are done together. Individual rates are set on the basis of standards and methods enacted by the Legislature, and the rate that comes out at the end is based on an analysis of what rate is required to pay an efficiently and economically operated nursing home. Thus, the State's rate-setting process determines rates that are sufficient to pay the costs that must be incurred by economically and efficiently operated nursing homes. The rates produced by the rate-setting process are not necessarily the minimum required by the Boren Amendment, but they are within the range or zone required by Boren.

744 F.Supp. at 1533.

■ The HCFA is the agency that is charged with the interpretation of the Boren Amendment and, thus, its interpretation is entitled to deference. *See Chevron U.S.A., Inc. v. National Resources Defense Council,* 467 U.S. 837, 843–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984). The HCFA, in responding to comments concerning its rules and regulations, stated:

> With regard to the ... term "reasonable and adequate," it should be noted that the term is not a precise number, but rather a rate which falls within a range of what could be considered reasonable and adequate.

48 Fed.Reg. 56049. Court decisions addressing this issue have similarly declined to designate a precise rate requirement. They have noted that the reimbursement rate is to fall within a range or zone of reasonableness. *See, e.g., West Virginia Univ. Hosps.,* 885 F.2d at 26; *Colorado Health Care Ass'n v. Colorado Dep't of Social Servs.,* 842 F.2d 1158, 1167 (10th Cir.1988); *Wisconsin Hosp. Ass'n,* 733 F.2d at 1233.

The district court heard extensive testimony from officials of the State and from experts evaluating the state procedures and findings concerning the rates involved. The district judge assessed the credibility of the expert witnesses. He found the expert witness for the State to be credible and the expert witness for the appellants to have relied upon flawed statistics and, thus, not to be as credible. 744 F.Supp. at 1521–23. The judge concluded, after examining all of the evidence and hearing the witnesses, that Washington's reimbursement rates are reasonable and adequate. *Id.* at 1535.

■ We will reverse the factual findings of the district court only if they are clearly erroneous. *Securities & Exchange Comm'n v. American Principals Holding, Inc.,* 962 F.2d 1402, 1405 (9th Cir.1992). We conclude that these findings are not clearly erroneous and, in fact, are clearly supported by the record in the case. We therefore affirm the district court's holding that the State of Washington has met the procedural and substantive requirements of the Boren Amendment.

## II.

■ The appellants also challenge the application of an amendment to a regulation, Wash.Admin.Code § 388–96–210, dealing with the scope of field audits. The amendment was adopted in 1989 to apply to audits commencing in 1989, but these would involve the 1987 cost years. *See* Wash.St.Reg. § 89–11–100. The appellants contend that this amendment was not published in accordance with the state statute, Wash.Rev.Code § 74.46.105(9) (1989), and should not have been applied at least until

the audits for the year 1990. The district court held that this was not a necessary audit rule that had to be included in the Administrative Code. 744 F.Supp. at 1527. The court stated that

> [t]he State plainly has authority to direct auditors how to perform their audits within the scope of the statute and Administrative Code regulations without issuing rules on every detail of how the auditors are to do their work.

> If plaintiffs believe that it is improper for the auditors to apply the lid mechanisms, then the proper time to raise that issue is after the auditors have completed their audits when a provider may allege that he or she has been injured by the new procedure. At that point, a provider could make a challenge that application of the lids is arbitrary or capricious or in violation of law.

*Id.* at 1528. We agree with this conclusion of the district court.

### III.

The state agency has cross-appealed, contending that the district court erred in denying the defendants, as the prevailing parties in this section 1983 action, attorneys' fees under 42 U.S.C. § 1988. Section 1988 provides:

> In any action or proceeding to enforce [section 1983] ..., the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

42 U.S.C. § 1988(b) (1991). The United States Supreme Court in *Hughes v. Rowe,* 449 U.S. 5, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980), established a higher standard for the award of attorneys' fees to a defendant in a section 1983 action, requiring that a plaintiff's case must be "groundless or without foundation" before awarding attorneys' fees to a defendant. 449 U.S. at 14, 101 S.Ct. at 178.

■ The district judge concluded that because the providers' suit was neither frivolous nor without foundation, an award of attorneys' fees was not warranted. The state agency seeks to distinguish this case from *Hughes* on two bases: (1) that this is

not an ordinary civil rights action, in that it is purely commercial in nature seeking to recover additional funds and (2) that this is not an action to vindicate constitutional rights, but rather federal statutory rights. No other court has recognized these distinctions as being justification for varying from the core language of the Supreme Court in *Hughes.* We conclude that the district court did not abuse its discretion in applying the language of *Hughes* in denying attorneys' fees in this case.

AFFIRMED.