Michael K. WHITE and Sandra M. White, Plaintiffs,

v.

BIBB COUNTY, GEORGIA, et al., Defendants.

No. 5:96–CV–449–4(DF).

United States District Court, M.D. Georgia, Macon Division.

Dec. 7, 1998.

---

Phillip E. Friduss, Atlanta, GA, for Michael K. White, Sandra M. White.

Joseph W. Popper, Jr., Robert D. McCullers, Macon, GA, for Bibb County, Georgia, Robbie Johnson, Edward Hall, Neal Godbee, Martin Gazafy.

FITZPATRICK, Chief Judge.

The above styled action involves civil rights claims brought by the plaintiffs, Michael and Sandra White, husband and wife, pursuant to 42 U.S.C. § 1983 and state law. Plaintiffs alleged that they were the lawful owners of a home located in Bibb County, Georgia, of which members of the Bibb County Sheriff's Department assisted a private citizen in unlawfully taking possession.

A jury trial was conducted during the week of March 9, 1998. During trial, the following evidence was presented. Plaintiffs had purchased the property on which the subject home was located and hired Stephen Tracy Mitchell to build the house. Plaintiffs lived in the home from late 1993 through mid–1994, when Mr. White was transferred to Texas. During the time Plaintiffs first moved to Texas, they left furniture in the Bibb County home, and they allowed a friend, Robert McCauley, to live in the house as the unofficial caretaker.

From the time the home was constructed through December, 1994, Plaintiffs were involved in a legal dispute with the builder, Mr. Mitchell, over construction costs. On December 3, 1994, upon learning that the plaintiffs had moved to Texas and believing the house was unoccupied, Mr. Mitchell planned to take possession of the house. He called the Bibb County Sheriff's Department and informed them of his plans in case a breach of the peace occurred.

Albert Hall, a deputy sheriff, was dispatched to the property. Certain members of Mr. Mitchell's family were present and informed Deputy Hall that the home belonged to Mr. Mitchell and that the people buying the home from him had not paid him, so his attorney advised him to take possession of the house.

Mrs. Mitchell called Mr. McCauley at work and asked him if he lived at the house, and she then handed the phone to Deputy Hall. Mr. McCauley told Deputy Hall that he was at work and would try to get to the house as soon as possible. From work, he called Mr. White in Texas to tell him about the situation at the house.

Deputy Hall informed the Mitchells that he could not give them possession of the home, even though Mr. Mitchell had presented Deputy Hall with a deed to the home. Nevertheless, unbeknownst to Deputy Hall,

Mr. Mitchell entered the home by disarming the alarm system and breaking a window. Once Mr. Mitchell had gained entry, he asked Deputy Hall to come inside the home to see if anyone was living there.

Defendant Martin Gazafy, a Deputy Sheriff, arrived on the scene, because Deputy Hall's shift was over. Deputy Hall informed Deputy Gazafy of the situation. Deputy Gazafy witnessed Mr. Mitchell change the locks on the house.

Hale Almand, the plaintiffs attorney at the time, arrived on the scene and told the deputies that the house belonged to his clients, the Whites, and he demanded that everyone leave the property at once. He informed Deputy Gazafy that he had someone coming over to bring the deed to the house to prove that it belonged to the Whites. David Hollingsworth arrived at the house and presented a copy of a deed purporting to give ownership of the subject property to the Whites. The date on this deed was later than the date on the deed that Mr. Mitchell had produced.

Deputy Gazafy informed Mr. Almand that he could not force Mr. Mitchell to leave the premises and that he could not determine who was the true owner of the property, because he was presented with competing deeds. The deeds could not be verified, because the courthouse was closed at the time.

While inside the house, one of the deputies found a box containing a small amount of suspected marijuana seeds and cocaine residue and some guns, so he summoned Defendant Neal Godbee, a drugs and weapons specialist, to the property. While at the scene, Deputy Godbee was informed of the dispute as to the ownership of the property. He was also informed that Hale Almand had been there with a deed, although Deputy Godbee did not see the document. He also learned that Mr. Mitchell claimed to be the owner of the property and that he had already entered the property by breaking a window.

Mr. McCauley explained to Deputy Godbee that he had been staying at the house. Deputy Godbee testified that Mr. McCauley asked for his advice as to whether or not to vacate the premises, and he told Mr. McCau-ley that he could not tell him what to do, but that if he were in the situation, he would "back away." Mr. McCauley testified that Deputy Godbee asked him to leave the premises and asked him how soon he could move out.

Mr. McCauley ended up leaving the house, and Mr. Mitchell moved in. It was almost a full year before the Whites got the house back. While Mr. Mitchell was in possession of the house, he caused extensive damage to occur to the house.

At trial, after the Plaintiffs rested, they moved for a mistrial and to strike the evidence regarding the true ownership of the home. The Court denied both motions. Then, Defendants moved for judgment as a matter of law, which the Court denied. At the close of Defendants' evidence, Defendants renewed their motion for judgment as a matter of law. The Court granted Defendants' motion in part and dismissed Defendants Hall and Gazafy on qualified immunity grounds, dismissed the County and the Sheriff pursuant to *Monell v. Department of Social Svcs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and dismissed Plaintiffs' state law claims on sovereign immunity grounds. The only remaining defendant was Neal Godbee.

Defendants had argued in their motion for judgment as a matter of law that they were entitled to qualified immunity with respect to the plaintiffs' § 1983 claims. The parties disagreed about whether Defendants could raise this defense at trial. They agreed that a charge a qualified immunity should not be given to the jury but that the Court should consider the issue with respect to Defendant Godbee, if necessary, after a verdict was rendered.

The Court instructed the jury, and they retired to deliberate. In the middle of their deliberations, the jury notified the Court that they had a question: what did "intentional" mean, with respect to the Court's instruction that "in order to prove their [§ 1983] claim [against Defendant Godbee], . . . the plaintiffs must prove . . . that the defendant intentionally committed acts which violated one or more of the Plaintiffs' Federal constitutional rights. . . ." The Court gathered the jury in

the jury box and attempted to explain the dictionary definition of "intentional" to the jury. The Court asked for acknowledgment that it had clarified the matter, but several jurors revealed that they were still confused about the matter. So, after consulting both parties and considering the matter at length, the Court decided to give the following additional instruction:

> You were instructed that the first element that Plaintiffs have to prove is that the defendant intentionally committed acts which violated one or more of the Plaintiffs' federal constitutional rights. That is, in order to satisfy this element, you must first find that he intended to commit an act, and then you must find that that act violated Plaintiffs' constitutional rights.

The jury found that Defendant Godbee had intentionally violated Plaintiffs' constitutional rights and that his acts were the proximate cause of damages sustained by the plaintiffs. The jury awarded Plaintiffs $3,500 but found that no punitive damages were warranted.

After the verdict was rendered, Defendants renewed their motion for judgment as a matter of law. The Court instructed the parties to submit briefs on the issues involved.

Presently pending before the Court are six motions: (1) Defendant Godbee's Motion for a New Trial (tab # 42); (2) Defendant Godbee's Renewed Motion for Judgment as a Matter of Law (tab # 43); (3) Defendant Bibb County's and Defendant Robbie Johnson's Motion for Attorney's Fees (tab # 45); (4) Plaintiffs' Motion for Attorney's Fees (tab # 53); (5) Plaintiffs' Motion for Enlargement of Time within which to file their motion for attorney's fees (tab # 62); and (6) Defendant Godbee's Motion to Strike Plaintiffs' Motion for Attorney's Fees (tab # 57).

### A. Defendant Godbee's Motion for a New Trial

Defendant Godbee has filed a motion for a new trial on the grounds that the verdict is contrary to the law and the weight of the evidence. Defendant argues that this Court erred during the course of the trial in several respects, each of which will be addressed in turn.

### 1. Recharge Regarding Intent

Defendant argues that the Court's recharge to the jury with respect to the definition of "intentionally" was erroneous, because it improperly permitted the jury to render a verdict against the Defendant solely on a negligence standard and because the Court charged that definition in isolation.

■ The Court disagrees with Defendant and finds that its re-charge to the jury with respect to the definition of "intentionally" did not set forth a negligence standard. The Eleventh Circuit Pattern Jury Charge pertaining to intent states that "[w]hen it is claimed, as in this case, that a police officer has intentionally acted to deprive a citizen of his constitutional rights, it need not be shown that the Defendant ... acted with the specific knowledge of the Plaintiff's particular constitutional right which he violated. [Government officials] are presumed to know about the basic, unquestioned constitutional rights of the citizen with whom they routinely deal in an official capacity." *Eleventh Circuit Pattern Jury Instructions, Civil Cases, Federal Claims Instruction No. 2.1*. According to the law of this Circuit, therefore, Defendant Godbee did not have to act with specific knowledge that he was violating a particular constitutional right of the plaintiffs. This Court's re-charge to the jury that to be liable, the jury would have to find that Defendant Godbee intentionally committed an act and that act violated one or more of the Plaintiffs' federal constitutional rights, therefore comports with the law of this Circuit. As such, Defendant is not entitled to a new trial on this ground.

■ Furthermore, this re-charge was given to the jury in isolation, because that was the only question they asked. The jury had a tape recording of the entire jury charge, and they were instructed that they were free to rewind and listen to it as many times as was necessary. Therefore, no error was committed, and Defendant is not entitled to a new trial on this ground.

### 2. Open Court Deliberation by Jury

Defendant argues that "the Court erred in permitting the jury to deliberate in open

court and in the presence of the parties." Defendant did not expound on this argument at all or explain how the jury was permitted to deliberate in open court. The Court can only assume that Defendant is referring to the fact that the Court allowed the jury to ask a question and that the Court tried to render an answer to their question in open court. While attempting to explain the matter to the jury, the Court did request the jury to acknowledge whether they understood the explanation given to them and if they had any further questions. This was, in the Court's best judgment, necessary in order to ensure that the jurors' question was answered. The only alternative would have been for the Court to address the question ex parte, which certainly would have been an error on the Court's part. Therefore, the Court finds that its actions were necessary and did not constitute an error justifying a new trial. Accordingly, Defendant is not entitled to a new trial on this ground.

### 3. Evidence of Falsification of Documents

Defendant argues that the Court erred in denying Defendant the opportunity to present evidence that Plaintiff Michael White had previously falsified documents regarding relocation payments.

Prior to the beginning of trial, Plaintiff filed a motion in limine seeking to exclude evidence of business dealings in which Mr. White was involved. The motion in limine specifically mentioned evidence of Mr. White's dealings with persons building his homes in various cities in which he has lived. Before the trial started, the Court gave the parties an opportunity to argue about the motions on limine. But, when the time came to discuss the subject motion, Defendants stated that they did not intend to introduce any of this evidence, so no further discussion was necessary. The Court considered the motion in limine to be undisputed, so it was granted, and the Court moved on to the next motion. Later, during the trial, Defendant attempted to introduce evidence that Mr. White forged documents for a relocation company. Plaintiffs objected, based on the ground that the Court had previously grant-

ed Plaintiffs' motion in limine regarding evidence concerning documents related to other business dealings. Defendant argued that the motion in limine involved documents pertaining to business dealings with builders only; because the evidence then sought to be introduced involved a relocation company rather than a builder, it was not excluded under the motion in limine. The Court sustained Plaintiffs' objection and did not allow Defendant to enter the document into evidence.

■ While the evidence that Mr. White falsified documents related to his relocation arguably was not excluded by the Plaintiffs' motion in limine, the Court was within its discretion in ruling that such evidence was nevertheless excludable. Such evidence, while relevant for impeachment purposes, would have had little probative value and would have been unduly prejudicial to Plaintiffs. Therefore, the Court did not err by refusing to allow Defendant to introduce this evidence, and Defendant is not entitled to a new trial on this ground.

### 4. Drug Paraphernalia

Defendant argues that the Court erred in denying Defendant the right to question Robert McCauley regarding the presence and ownership of drug paraphernalia found on the Whites' property.

Prior to the beginning of trial, Plaintiff filed a motion in limine seeking to exclude evidence of drug paraphernalia, drug residue, marijuana seeds, and weapons, which belonged to Mr. McCauley and were found on the premises of the subject house. After both parties engaged in a lengthy oral argument on the subject, the Court decided that this evidence was necessary to explain why Neal Godbee was called to the scene. Unless he could present evidence that he was called to the scene because drugs and guns were found there, Defendant would not otherwise be able to explain why he was called to the house. And, it was necessary to Defendant's defense to explain his presence. However, the Court found that this was the only purpose for which Defendant was allowed to introduce such evidence, because it would be

unduly prejudicial to Plaintiffs if introduced for any other purpose.

■ During the cross examination of Mr. McCauley, Defendant attempted to question him about the drugs found at the house. Plaintiffs objected, because the Court had held that the only purpose for introducing such evidence was to explain Defendant Godbee's presence at the house. During this cross examination, however, Defendant was attempting to use the evidence for impeachment purposes. The Court sustained the objection and did not allow Defendant to question Mr. McCauley about the drugs and guns. This decision was within the Court's discretion, and the Court did not err by refusing to allow Defendant to introduce the evidence for impeachment purposes. Therefore, Defendant is not entitled to a new trial on this ground.

### 5. Verdict Contrary to Evidence

Defendant argues that the verdict is contrary to law and the weight of the evidence for three at least reasons. First, Defendant argues that the weight of the evidence established that the plaintiffs were not the legal owners of the property in question and had no possessory interest or constitutional right at stake in the matter. Second, Defendant argues that the weight of the evidence established that Defendant Godbee was not involved in denying Plaintiffs any property right in the home, if any such right existed. Third, Defendant argues that the weight of the evidence established the complete lack of any causal connection between any actions of Defendant Godbee and the denial of any constitutional right to the Plaintiffs.

■ There was conflicting evidence produced by the plaintiffs and the defendant on all of these issues. There being a factual dispute on these matters, the issues were turned over to the jury. Whether the weight of the evidence favored the plaintiffs as the legal owners of the property and whether Defendant Godbee violated Plaintiffs' rights were solely within the province of the jury, and the Court finds no reason to upset the verdict. Therefore, Defendant is not entitled to a new trial on these grounds.

For the foregoing reasons, Defendant's motion for a new trial is hereby **DENIED**.

### B. Defendant Godbee's Renewed Motion for Judgment as a Matter of Law

At the close of the plaintiffs' case and again at the close of their own case, the defendants moved for judgment as a matter of law. The Court granted Defendants' motion with respect to Defendants Hall and Gazafy, as well as the County and the Sheriff. However, the Court denied the motion with respect to Defendant Godbee. The Court found that the plaintiffs had raised a genuine issue of material fact with respect to whether Defendant Godbee had contributed to the possession of the subject house by Mr. Mitchell by advising Mr. McCauley to vacate the premises, either by directly ordering or merely suggesting him to do so. This factual dispute was given to the jury to resolve. By virtue of the fact that the jury found that Defendant Godbee did violate the plaintiffs' constitutional rights, the jury necessarily determined that Defendant Godbee had contributed to the possession of the house by Mr. Mitchell. The parties agreed to leave the issue of whether Defendant Godbee is entitled to qualified immunity to the Court to resolve after trial. This issue is now before the Court on Defendant's renewed motion for judgment as a matter of law.

■ To overcome qualified immunity, the plaintiffs must show (1) that Defendant Godbee violated their constitutional rights and (2) that those rights were clearly established at the time of the violation. Defendant argues that the plaintiffs failed to show that he violated their constitutional rights, because they did not establish that they had a valid property interest in the subject property. The jury found otherwise, as evidenced by their verdict in favor of the plaintiffs. Because the Court finds that there is a legally sufficient evidentiary basis for a reasonable jury to have found for the plaintiffs on this issue, the Court will not disturb the jury's finding. As such, the Court assumes, for purposes of qualified immunity, that Plaintiffs have demonstrated that Defendant Godbee violated their constitutional rights. The Court must now determine whether Defen-

dant Godbee is entitled to qualified immunity for the violation of the plaintiffs' constitutional rights.

■ Qualified immunity may be asserted by a defendant who is being sued personally for actions he or she took while acting under color of state law. *Harlow v. Fitzgerald*, 457 U.S. 800, 815, 102 S.Ct. 2727, 2736–37, 73 L.Ed.2d 396 (1982); *Ansley v. Heinrich*, 925 F.2d 1339, 1344 (11th Cir.1991). The doctrine of qualified immunity was created to "avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738. As the Eleventh Circuit explained,

> that qualified immunity protects government actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their individual capacities. Unless a government agent's act is so obviously wrong, in the light of the pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit. Because qualified immunity shields government actors in all but the exceptional cases, courts should think long and hard before stripping defendants of immunity.

*Lassiter v. Alabama A & M Univ. Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir.1994) (en banc) (citations omitted).

■ Entitlement to qualified immunity is determined under an objective reasonableness test. *Harlow*, 457 U.S. at 815–19, 102 S.Ct. 2727. Under this test, public officials performing discretionary functions have qualified immunity if their challenged conduct did not violate a clearly established constitutional right of which a reasonable person would have known, given the circumstances and information known at the time. *Id.* at 818, 102 S.Ct. 2727.[1]

For a constitutional right to be "clearly established" to the point that qualified immunity does not apply, "the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that 'what he is doing' violates federal law." *Lassiter*, 28 F.3d at 1149. The Eleventh Circuit has repeatedly emphasized that plaintiffs may not discharge their burden of showing that a constitutional right is clearly established by referring to general rules of law. *See e.g., Id.* at 1150; *Hamilton v. Cannon*, 80 F.3d 1525, 1528 (11th Cir.1996). The case(s) relied upon by the plaintiff must be *materially similar* to the facts of the case at issue, because "[p]ublic officials are not obligated to be creative or imaginative in drawing analogies from previously decided cases." *Lassiter*, 28 F.3d at 1150.

As a threshold matter, Plaintiffs argue that Defendant Godbee waived his qualified immunity defense, because he failed to argue that he was entitled to the defense before trial. While Defendants raised the defense of qualified immunity in the Answer, they did not file a motion to dismiss or motion for summary judgment and did not mention the defense again until the pretrial conference. The Court has already expressed its displeasure with the Defendants for failing to file a motion for summary judgment and raising the defense of qualified immunity therein, the determination of which might very well have precluded the necessity of trial. However annoyed the Court is that Defendants failed to do so, for the reasons that follow, the Court does not find that Defendants waived their right to raise the defense of qualified immunity by failing to raise it in a motion for summary judgment.

■ In *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985), the Supreme Court stated that qualified immunity "is an immunity from suit rather than a mere defense to liability; ... [I]t is effectively lost if a case is permitted to go to trial." At the very least it is a defense to liability, but it is much more than that. The Court reads the statement in *Mitchell* as standing for the principle that qualified immunity is not only a defense to liability, but it is also a defense to the burdens of discovery

---

1. In the case at bar, the parties do not dispute that Defendant Godbee was performing a discretionary function when he engaged in the challenged conduct.

which might otherwise be imposed on a defendant if it were not allowed to invoke the protections of the defense before the trial stage. So, while the defendant can invoke its protections before trial in a motion to dismiss or motion for summary judgment, he is not required to do so. Failing to raise the defense early on in the case might very well deny the defendant the full benefits of the defense, but it does not preclude the defendant from raising the defense at trial. Therefore, the Court finds that Defendant Godbee did not waive his right to raise the defense of qualified immunity by failing to invoke it in a motion to dismiss or motion for summary judgment.

Even if Defendant Godbee is not deemed to have waived the qualified immunity defense, Plaintiffs argue that he is nevertheless not entitled to the defense, because he violated the Plaintiffs' clearly established constitutional rights. It is well settled in the Eleventh Circuit that "the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, the Eleventh Circuit court of Appeals, or the highest court of the state where the case arose." *Jenkins By Hall v. Talladega City Bd. of Educ.*, 115 F.3d 821, 826 n. 4 (11th Cir.1997) (citing *Hamilton v. Cannon*, 80 F.3d 1525, 1532 n. 7 (11th Cir.1996) and *Courson v. McMillian*, 939 F.2d 1479, 1497–98 & n. 32 (11th Cir.1991)). The only such case that Plaintiffs have pointed to is *Booker v. City of Atlanta*, 776 F.2d 272 (11th Cir. 1985), an Eleventh Circuit case, which Plaintiffs argue clearly establishes that an officer's actions at the scene of a repossession, which facilitate the repossession and amount to more than mere presence to avoid a breach of the peace, can constitute state action for purposes of a § 1983 claim based on alleged violations of due process.

In *Booker*, an Atlanta police officer accompanied the repossessor of two trucks in the possession of the plaintiff, Joseph Booker, to the scene of the repossession. The plaintiff sued the city, claiming that the repossession was wrongful and that the officer's involve-

ment in it amounted to a violation of the plaintiff's due process rights. *Id.* at 273. The court noted that, if the officer's involvement at the repossession scene was nothing more than mere presence to prevent a breach of the peace, then the requisite state action to support the plaintiff's § 1983 claim would have been lacking. *Id.* However, the court found that the officer's involvement was more extensive than mere presence, because he arrived with the repossessor. *Id.* at 274. This conduct possibly gave the repossession "a cachet of legality and [had] the effect of intimidating Booker into not exercising his right to resist, thus facilitating the repossession." *Id.*

Here, Plaintiffs argue that Defendant Godbee facilitated Mr. Mitchell's unlawful possession of the Whites' house and that he was not merely present, because he instructed Mr. McCauley to leave the premises. Plaintiffs argue that Defendant Godbee's actions gave Mr. Mitchell's possession of the house a similar "cachet of legality" as was present in *Booker*.

While many of the other facts in *Booker* are similar to the facts of the case at bar, here, unlike *Booker*, Defendant Godbee did not even arrive on the scene until after Mr. Mitchell had already taken possession of the house. This difference is material. The "cachet of legality" that the *Booker* court found significant enough to constitute state action was the fact that the officer arrived on the scene of the repossession *with the repossessor*, which the court found could have had the effect of intimidating Booker into not exercising his right to resist the repossession. *Id.* at 274. In contrast, here, the only fact which arguably might have facilitated Mr. Mitchell's possession of the subject home was him telling Mr. McCauley to leave the premises. But, Mr. Mitchell was already in the house by the time both Mr. McCauley and Defendant Godbee arrived on the scene.[2] In fact, Mr. Mitchell entered the house without the knowledge or assistance of Defendant Godbee. Furthermore, it is undisputed that De-

**2.** Arguably, the only thing that Defendant Godbee could have done at that point to protect the Whites' rights was to force Mr. Mitchell to leave the premises. But, had he done so, Defendant

Godbee might have risked violating Mr. Mitchell's rights since Mr. Mitchell possessed a deed to the property.

fendant Godbee was called to the scene for the sole purpose of investigating drugs and guns, not because of the property dispute. Therefore, Defendant Godbee's actions did not enable Mr. Mitchell's possession of the house, because Mr. Mitchell had already obtained possession of the house by the time Defendant Godbee engaged in the challenged conduct. *See Cofield v. Randolph County Comm'n,* 90 F.3d 468, 471–72 (11th Cir.1996) (deputy sheriff who accompanied car dealership employees to repossession of vehicle did not facilitate repossession, where evidence showed that repossession had been completed prior to deputy sheriff's involvement).

The Court thus finds that Defendant Godbee's actions do not rise to the same level of a "cachet of legality" present in the *Booker* case. Because of this significant difference, the facts of *Booker* are not sufficiently materially similar to the facts of the case at bar such that a reasonable officer in Defendant Godbee's position would have know that his actions would violate the plaintiffs' constitutional rights. Therefore, Plaintiffs cannot rely on *Booker* as the case that clearly establishes that Godbee had a constitutional duty to refrain from advising Mr. McCauley to leave the premises under the circumstances.

 Plaintiffs have not cited to any other controlling authority, which, based on the information known to Defendant Godbee at the time—that the ownership of the property was in dispute, that both Mr. Mitchell and Hale Almand (acting on behalf of the Whites) had produced deeds to the property, that Mr. Mitchell had already taken possession of the property, and that Mr. McCauley, who claimed to be staying at the house, was in possession of drugs in the house— would put a reasonable officer in Defendant Godbee's position that his conduct would violate Plaintiffs' clearly established constitutional rights. As such, Defendant Godbee is entitled to qualified immunity.

Therefore, while the defendants could likely have avoided trial by raising the defense of qualified immunity in a motion to dismiss or motion for summary judgment, their failure to do so does not preclude them from raising it at trial. Because the Court finds that Defendant Godbee is entitled to qualified immunity for the violation of the plaintiffs' rights, Defendants' renewed motion for judgment as a matter of law is hereby **GRANTED.**

### C. Defendant Bibb County's and Defendant Robbie Johnson's Motion for Attorney's Fees

At the close of all of the evidence at trial, Defendants moved for judgment as a matter of law. The Court granted Defendants' motion with respect to Bibb County and Sheriff Robbie Johnson, because Plaintiffs had failed to prove the existence of an unconstitutional policy adopted and promulgated by the county or that such a policy caused the violation of the plaintiffs' rights, as is necessary in order to hold the county or Sheriff Johnson liable for § 1983 violations. *See Monell v. Dept. of Social Services,* 436 U.S. 658, 691–92, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Plaintiffs were required to establish that these defendants adopted such an official policy in one of four ways: (1) policy statements, rules, or regulations adopted by government rulemakers, (2) custom or pattern about which the local government entity knows and condones, (3) inadequate training, supervision, or hiring, (4) or unconstitutional conduct by a final policymaking official. Since the plaintiffs failed to produce evidence supporting any of these four methods, their § 1983 claims against the county and Sheriff Johnson failed as a matter of law.

As the prevailing parties with respect to Plaintiffs' § 1983 claims against the county and Sheriff Johnson, Defendants now move for attorney's fees pursuant to 42 U.S.C. § 1988(b), which states that, "[i]n any action or proceeding to enforce a provision of [§ 1983], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.…" The standard for awarding attorney's fees to a prevailing defendant is different than that applied to a prevailing plaintiff. The Supreme Court has stated that a court should award a prevailing defendant's attorney's fees only "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith."

*Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978); *Hughes v. Rowe*, 449 U.S. 5, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (applying standard to § 1983 actions). "[T]he fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees." *Hughes*, 449 U.S. at 14, 101 S.Ct. 173.

Defendants argue that Plaintiffs' § 1983 action against the county and Sheriff Johnson was frivolous, because after conducting discovery, the plaintiffs knew that they could produce no evidence that the county or Sheriff Johnson had adopted or implemented an unconstitutional policy or that such a policy caused the deprivation of the plaintiffs' constitutional rights. Yet, they pursued their claims to trial.

Plaintiffs argue that their § 1983 claims against the county and the sheriff were not frivolous. They contend that the unconstitutional policy adopted and promulgated by the county and Sheriff Johnson was the policy that individual officers were supposed to use their discretion when faced with the type of situation that Deputies Hall, Gazafy, and Godbee faced at the Whites' house. Plaintiffs assert that the policy should have been that officers are allowed to do nothing at the scene of a repossession other than keep the peace and under no circumstances are they to facilitate the repossession. If that policy had been in place, Plaintiffs contend, their property rights would not have been violated by the defendants' conduct.

Even though the plaintiffs did not produce enough evidence to surmount the defendants' motion for judgment as a matter of law, the Court does not find that these claims were frivolous, unreasonable, or without foundation. *Christiansburg*, 434 U.S. at 421, 98 S.Ct. 694. As the Court has previously noted, had the defendants filed a motion for summary judgment, these claims might very well have been resolved at that point, precluding the necessity of trial. Therefore, the Court finds that the defendants are not entitled to attorney's fees with respect to the plaintiff's § 1983 claims against the county and the sheriff.

**D. Plaintiffs' Motion for Attorney's Fees, Plaintiffs' Motion for Enlargement of Time, & Defendant Godbee's Motion to Strike Plaintiffs' Motion for Attorney's Fees**

Because the Court has found that Defendant Godbee is entitled to judgment as a matter of law on qualified immunity grounds, Plaintiffs are no longer the prevailing parties with respect to their claim against Defendant Godbee. Therefore, all motions that have been filed with regard to this matter are **DENIED AS MOOT.**

**CONCLUSION**

For the foregoing reasons, the Court finds as follows. First, Defendant's motion for a new trial is hereby **DENIED.** Second, Defendant Godbee's renewed motion for judgment as a matter of law is hereby **GRANTED.** Third, Defendant Bibb County's and Defendant Robbie Johnson's Motion for Attorney's Fees is hereby **DENIED.** Finally, because Plaintiffs are no longer the prevailing parties with respect to their claims against Defendant Godbee, the plaintiffs' motion for attorney's fees, the plaintiffs' motion for enlargement of time, and defendants' motion to strike the plaintiffs' motion for attorney's fees are all hereby **DENIED AS MOOT.**

SO ORDERED.