**Jane A. FOX, Plaintiff,**

v.

**STATE UNIVERSITY OF NEW YORK, State University of New York at Stony Brook, Defendants.**

No. 05–cv–2350 (ADS)(ETB).

United States District Court, E.D. New York.

Feb. 27, 2010.

Jane A. Fox, Wilmington, NC, Plaintiff, Pro Se.

Andrew A. Cuomo, State of New York, Office of the Attorney General by Ralph Pernick, Assistant Attorney General, Mineola, NY, for the Defendants.

SPATT, District Judge.

Plaintiff Jane Fox is a former employee of the defendant State University of New York at Stony Brook ("Stony Brook"). She brought the present action against Stony Brook and the State University of New York, alleging that they discriminated against her on the basis of her age and disability. Pursuant to a previous order of the Court in this matter, the plaintiff's age discrimination claims were dismissed, but certain of her disability discrimination claims remained pending. The defendants now move for summary judgment on the plaintiff's remaining disability claims. For the reasons set forth below, the Court grants the defendants' motion in its entirety.

## I. BACKGROUND

Defendant Stony Brook hired plaintiff *pro se* Jane Fox as a Clinical Associate Professor of nursing on August 28, 1995, for a single year term of employment. Fox's appointment was for part-time work, which she performed for the 1995/1996 school year. In the summer of 1996, Stony Brook reappointed Fox to the same position, still part-time. Each summer thereafter, up to and including the summer of 2002, Stony Brook reappointed Fox to single year terms of part-time employment. However, in February 2003, Stony Brook informed Fox that her term appointment would not be renewed for the 2003/2004 school year due to budget cuts. Stony Brook informed Fox that her employment would nevertheless be extended from August 31, 2003 (the ordinary end of a school-year term) until December 31, 2003, at which time Fox was scheduled to travel to El Salvador on a Fulbright scholarship. Therefore, Fox's employment with Stony Brook terminated on December 31, 2003.

Fox suffers from two medical conditions. The first is spasmodic torticollis, a disorder that causes, among other things, pain and muscle spasms in the neck. The second, degenerative disc disease, causes lower back pain. According to the plaintiff, while she worked at Stony Brook at times these two conditions significantly affected her ability to walk, eat, drink, sleep, speak in front of groups, and use a computer.

Fox alleges that the true reason Stony Brook declined to renew her employment after the summer of 2003 was because she suffered from these disabilities. Fox voiced this complaint to then-Stony Brook President Shirley Strum Kenny in a letter dated August 11, 2003. Fox alleges that the defendants then retaliated against her for making this complaint by refusing to reverse its decision not to terminate her; refusing to investigate her complaint; and otherwise harassing her.

Fox also claims that Stony Brook discriminated against her based on her disability while she was an employee. According to Fox, she was purposefully paid less than other similarly situated and non-disabled employees, and she was also denied full-time employment with Stony Brook because of her disability. Fox also describes other alleged mistreatment that resulted from her disability. For example, she claims she was not given a computer or a telephone line at Stony Brook, and that, at times, she was purposely not notified of changes to departmental meeting times. She also describes one instance where she found that the desk she used had been locked without her knowledge.

The plaintiff commenced the present case on May 16, 2005, after receiving a right to sue letter from the Equal Employment Opportunity Commission ("EEOC"). The plaintiff asserted the substance of her present claims by attaching a photocopy of her EEOC complaint. This EEOC complaint alleged the above-described facts, as well as additional facts and conclusions relating to now-dismissed causes of action. The complaint did not name any specific causes of action. Pursuant to the lenient standards applied to *pro se* litigants, the Court interpreted the complaint to assert violations of the Age Discrimination in Employment Act ("ADEA"), as well as Titles I and II of the Americans with Disabilities Act ("ADA").

In a decision dated June 7, 2006, the Court dismissed the ADEA and ADA Title I claims on sovereign immunity grounds, but allowed the plaintiff to proceed on her ADA Title II claims, which included both discrimination and retaliation. Before the defendants answered this complaint, the plaintiff amended her complaint by right, so as to name as additional defendants ten Stony Brook administrators. The plaintiff did not otherwise materially change the substance of the complaint. In an order dated July 23, 2007, 497 F.Supp.2d 446 (E.D.N.Y.2007), the Court dismissed the complaint against these individual defendants. The remaining defendants deny the charges alleged in the plaintiff's amended complaint.

The parties have completed discovery, and the defendants now move for summary judgment on all claims. The defendants assert that the plaintiff does not have a disability as defined by the ADA, and moreover, that she cannot show that she suffered any negative treatment because of her alleged disability. Further, the defendants maintain that no retaliation claim can stand, because Fox's employment was terminated before she complained of disability discrimination. The plaintiff opposes this motion, and asserts that there are triable issues of fact with respect to both the existence of her disability and her mistreatment on the basis of this disability.

## II. DISCUSSION

### A. Summary Judgment Standard

It is well-settled that summary judgment under Fed.R.Civ.P. 56(c) is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is "material" within the meaning of Fed.R.Civ.P. 56 when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir.1995) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam), and *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989)).

Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P.

56(e)). However, the nonmoving party cannot survive summary judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving party. *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. Summary judgment is appropriate when the moving party can show that "little or no evidence may be found in support of the nonmoving party's case." *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223–24 (2d Cir.1994) (citations omitted).

### B. Plaintiff's Pro Se Status

In reviewing the plaintiff's submission, the Court is mindful that the plaintiff is proceeding *pro se* and that her submissions should be held " 'to less stringent standards than formal pleadings drafted by lawyers.' " *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980) (per curiam) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)); see also *Ferran v. Town of Nassau*, 11 F.3d 21, 22 (2d Cir. 1993). The Court recognizes that it must make reasonable allowances so that the *pro se* plaintiff does not forfeit rights by virtue of her lack of legal training. See *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983). Indeed, district courts should "read the pleadings of a pro se plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.' " *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994)). Nevertheless, the Court is also aware that *pro se* status " 'does not exempt a party from compliance with relevant rules of procedural and substantive law.' " *Traguth*, 710 F.2d at 95 (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir.1981)).

### C. As to the Plaintiff's Alleged Disability

The plaintiff asserts that she is protected from discrimination by the ADA based on medical conditions that are severe enough to amount to a "disability" as defined by the ADA. The ADA defines a disability as, among other things, "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102. According to the plaintiff, the spasmodic torticollis and degenerative disc disease from which she suffers significantly impair several of her major life functions. The defendants dispute this contention.

In reviewing the relevant evidence, it appears to the Court that there would likely be triable issues of fact with respect to the issue of whether the plaintiff suffers from a disability as defined by the ADA. However, the Court declines to rule on the issue because, even assuming the plaintiff does suffer from a disability, summary judgment is appropriate on independent grounds.

### D. As to the Plaintiff's Discrimination Claim for Non–Renewal of Employment

The plaintiff asserts that the defendants chose not to renew her employment for the 2003/2004 school year in whole or in part because of her disability. Again, this contention is disputed by the defendants.

To succeed on a claim of employment discrimination, the plaintiff must first establish a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To do this, the plaintiff must show that "(1) [she] was within the protected class; (2)[she] was qualified for the position; (3)[she] was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Leibowitz v. Cornell University*, 584 F.3d

487, 498 (2d Cir.2009); *see also Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir.1994). With regard to the fourth prong of this test, the Second Circuit has held that an inference of discrimination may be drawn either from (1) direct evidence of discriminatory intent, or (2) a showing by the plaintiff that "[she] was subjected to disparate treatment ... [compared to persons] similarly situated in all material respects to ... [herself]." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir.2000) (internal quotations and citations omitted).

Here, the plaintiff presents no direct evidence of disability-based discrimination. That is, there is no evidence that any individual ever made inappropriate comments regarding her disability, or otherwise indicated either overtly or implicitly that her disability was a basis for discrimination. Rather, the plaintiff asserts that the Court may draw an inference of discrimination because other similarly situated, non-disabled employees had their employment renewed while hers was not. The defendants contend that the plaintiff has adduced no evidence as to this contention. The Court agrees.

■ Generally, the plaintiff's burden in establishing a prima facie case of discrimination under Title VII is "minimal." *Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir.2000). It is also generally a "question of fact for the jury" as to whether a person is similarly situated to the plaintiff in a discrimination case. *Graham*, 230 F.3d at 39. Nevertheless, the Second Circuit has held that to establish a prima facie case of employment discrimination based on disparate treatment, the plaintiff must be able to show that there is a "reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases." *Id.*

■ In the present case, the most essential characteristics that would make a comparator similarly situated to the plaintiff are that the individual worked at the School of Nursing part-time on a term appointment. Such a comparator could conceivably give rise to an inference of discrimination if the non-disabled comparator's term was renewed while the plaintiff's term was not renewed. However, the plaintiff has not named any putative comparator who has these essential characteristics. To the contrary, there is significant evidence that a number of part-time faculty members at the School of Nursing were also denied reappointment at the same time as the plaintiff. In light of this, the Court finds that the plaintiff has failed to establish that her alleged adverse employment action occurred under circumstances giving rise to an inference of discrimination. The Court therefore dismisses the plaintiff's discrimination claim based on the defendant's failure to renew her employment contract.

### E. As to the Plaintiff's Retaliation Claim

The plaintiff also alleges that the defendants retaliated against her for complaining about disability discrimination. In particular, the plaintiff asserts that the defendants took three retaliatory actions against her: First, they did not renew her appointment; second, they refused to investigate her allegations of disability discrimination; and third, her desk was locked one day without her knowledge. The defendants contest each of these allegations.

To establish a prima facie case of employment retaliation, the plaintiff must establish that (1) she "engaged in protected activity" (2) that her employer "was aware of this activity" (3) that her employer "took adverse action against [her]," and (4)

"a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action." *Sista v. CDC Ixis North America, Inc.*, 445 F.3d 161, 177 (2d Cir.2006) (internal quotations and citations omitted).

■ With respect to the plaintiff's assertion that her appointment was not renewed in retaliation for her complaints of disability discrimination, the Court finds that there are no triable issues of fact. The parties agree that the defendants informed the plaintiff in February 2003 that she would not be reappointed for the 2003/2004 school year. The uncontradicted evidence reveals that it was not until five months later, in July 2003, that the plaintiff first complained about disability discrimination. Here, the defendants decided not to renew the plaintiff's contract before she complained of discrimination. Therefore, the Court finds that the defendants' failure to renew the plaintiff's appointment was not a retaliatory action as a matter of law.

The plaintiff further alleges that the defendants retaliated against her by failing to investigate her complaints of disability discrimination. By contrast, the defendants assert that they did investigate the plaintiff's complaints, and found them lacking merit.

■ The Court finds that, even assuming the defendants did not investigate the plaintiff's complaints, her retaliation claim must fail as a matter of law. A retaliatory action must "affect[ ] the terms, privileges, duration or conditions of plaintiff's employment." *Pilgrim v. McGraw–Hill Companies, Inc.*, 599 F.Supp.2d 462, 478 (S.D.N.Y.2009). Here, there is no indication that the defendants' alleged failure to investigate these complaints reduced or affected the plaintiff's employment with the defendants. Also, as discussed above,

the decision not to renew the plaintiff's employment was made before the plaintiff lodged her complaint. As such, even if the defendants did fail to investigate the plaintiff's complaint, it was not a retaliatory action. *See id.* (holding that a failure to investigate claims of discrimination is not a retaliatory act); *Thomlison v. Sharp Elec. Corp.*, 99–cv–9539, 2000 WL 1909774, at *4 (S.D.N.Y. Dec. 18, 2000) (holding the same).

■ The plaintiff also asserts that, after she complained of disability discrimination, her desk was locked one day without her knowledge. First, this action likely cannot be said to be an "adverse employment action" for the purposes of a retaliation claim. Moreover, the plaintiff admits that Susan Vitale, another part-time employee at the School of Nursing, explained in a letter written after the incident that she had done this accidentally. Fox also admits that she has "no knowledge as to the motives of Vitale or what Vitale knew or did not know about [her]." (Pl.'s Rule 56.1 Stmt., ¶ 117.) Even taking the evidence in the best light for the plaintiff, the Court finds that this evidence could not support a retaliation claim as a matter of law.

Accordingly, the Court grants summary judgment in the defendants' favor dismissing the plaintiff's retaliation claim.

## F. As to the Plaintiff's Additional Discrimination Claims

The plaintiff asserts that she was treated unfairly in other ways on the basis of her disability while she was employed at Stony Brook. Specifically, she asserts that, based on her disability, she was never offered full-time work at Stony Brook, and she was paid less than other similarly-situated professors. The plaintiff also contends that, based on her disability, she was not provided amenities such as a computer

or telephone line during her tenure at Stony Brook.

### 1. Statute of Limitations

■■ In New York, claims brought under Title II of the ADA are subject to a three year period of limitations. *See Maccharulo v. Gould,* 643 F.Supp.2d 587, 592–93 (S.D.N.Y.2009); *Pape v. Board of Educ. of the Wappingers Central School Dist.,* No. 07–CV–8828 (KMK), Slip Copy, 2009 WL 3151200, *8 (S.D.N.Y. Sept. 29, 2009). In addition, unequal pay and failure to promote claims under Title II of the ADA are not considered "ongoing violations" for purposes of tolling the limitations period. *See, e.g., Harris v. City of New York,* 186 F.3d 243, 250 (2d Cir.1999).

Here, the plaintiff commenced the present action on May 16, 2005. Therefore, violations that occurred prior to May 16, 2002 are barred by the statute of limitations.

### 2. Disparate Pay

The plaintiff also claims that she was improperly paid less than other similarly situated, non-disabled Stony Brook employees at the School of Nursing. This is denied by the defendants. To analyze this claim by the plaintiff, the Court uses the same employment discrimination test described above. Thus, the plaintiff must first establish a prima facie case of discrimination by showing, among other things, that her alleged unfair pay occurred in "circumstances giving rise to an inference of discrimination." *Leibowitz,* 584 F.3d at 498.

■ As with her other discrimination claims, the plaintiff offers no direct evidence of disability discrimination, but rather asserts that the Court may draw an inference of discrimination because non-disabled, similarly situated employees were paid more than she was. As described above, the plaintiff's comparators in a discrimination suit must be similarly situated "in all material respects." *Graham,* 230 F.3d at 39. In the context of unequal pay, important factors for the Court to consider with respect to putative comparators are "specific work duties, education, seniority, and performance history." *Trotman v. CBS Radio Inc.,* No. 06–cv3389(FM), 2007 WL 2827803, *9 (S.D.N.Y. Sept. 27, 2007).

Here, the plaintiff names a number of putative comparators who worked full time for the defendants. Because the plaintiff worked only part time, these putative comparators cannot be said to be similarly situated.

■ However, the plaintiff also names two individuals, Carol Ginsburg and Glennie Metz, both of whom worked as part time professors at the Stony Brook School of Nursing, and who, for at least a period during 2002, were paid at a higher rate than the plaintiff. Nevertheless, neither woman serves as an appropriate comparator here, as there is no evidence that Metz or Ginsburg was otherwise similarly situated to the plaintiff. In particular, there is no evidence that Ginsburg or Metz had the same responsibilities that the plaintiff did; had performance histories similar to the plaintiff's; or had the same level of seniority as the plaintiff. In fact, the paperwork that the plaintiff relies on to show the salaries earned by Ginsburg and Metz also indicates that Ginsburg had worked at Stony Brook since September 1, 1987, and that Metz had worked there since March 15, 1982. (Pl.'s Opp. to Mot. for Summ. J., Exs. K, L.) By contrast, the plaintiff had worked at Stony Brook only since 1995. The Court therefore finds that the plaintiff has failed to show that Ginsburg or Metz were similarly situated to her.

In light of the lack of evidence showing that any similarly situated faculty members were paid at higher rates than the plaintiff, the Court finds that no inference of discrimination can be drawn from the evidence the plaintiff has presented. The plaintiff's disparate pay claim is therefore dismissed.

### 3. Failure to Promote to Full Time Status

 The plaintiff also asserts that, based on her disability, the defendants never promoted her to full-time status. As with her other claims, the plaintiff presents no direct evidence that the defendants considered her disability in their decision not to appoint her to a full-time position. Rather, she asserts that an inference of discrimination can be drawn from the disparate treatment of two non-disabled and similarly situated comparators, Lori Escalier and Marie Marino.

Both Escalier and Marino worked part-time at the School of Nursing in the 1990's, and were then given full-time status. There is some disagreement as to precisely when Escalier was appointed to a full-time position, but the parties agree it was between September 1, 1998 and March 1999. The parties also agree that Marino was appointed to a full time position on February 24, 1997. Both Escalier and Marino have remained in full-time appointments since these dates. The plaintiff does not offer any additional evidence showing what other employment characteristics Escalier or Marino share with her.

As discussed above, the limitations period for claims under Title II of the ADA bars claims that arose more than three years prior to the commencement of a legal action. As the present suit was filed May 16, 2005, claims that arose prior to May 16, 2002 are therefore barred. Also as discussed above, a failure to promote

claim accrues each time an individual is passed over for promotion, and is not generally viewed as relating back to previous failures to promote. *Harris,* 186 F.3d at 250. Therefore, neither Marino nor Escalier can serve as comparators here because they were only similarly situated to the plaintiff—if ever—before they were given full time appointments prior to 2000. As the plaintiff can only assert a failure to promote claim for actions taken on or after May 16, 2002, the treatment of Marino and Escalier prior to 2000 is not relevant.

With respect to the defendants' failure to promote the plaintiff after May 15, 2002, the plaintiff offers no evidence that similarly situated, non-disabled individuals were given full-time status while she was not. The Court therefore finds that the plaintiff has not produced evidence sufficient to raise an inference of discrimination with respect to the defendants' failure to grant her full-time status, and this claim is also dismissed.

### 4. Lack of Amenities

 The plaintiff further asserts that, based on her disability, she was not given a computer or a telephone for her use, and that the defendants purposefully misled her about departmental meeting times for the purpose of embarrassing her. The defendants assert that they did give the plaintiff access to a computer and a telephone, and also deny that the plaintiff was ever purposely misled about meeting times.

To begin with, the Court doubts that the plaintiff's allegations with regard to telephone use, computer access, and misleading meeting times are adverse employment actions in support of a discrimination claim. Moreover, even if these were adverse employment actions, the plaintiff has presented no evidence whatsoever that supports an inference of disability discrim-

ination. That is, there is no direct evidence that any of this alleged mistreatment was the result of her disability, and the plaintiff names no similarly situated non-disabled comparators who were treated differently. The Court therefore dismisses these claims.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the defendants' motion for summary judgment is granted in its entirety, and all the plaintiff's claims are dismissed; and it is further

**ORDERED** that the Clerk of the Court is directed to close this case.