Irene A. PLATI, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 11–161T.

United States Court of Federal Claims.

Aug. 19, 2011.

Irene A. Plati, Medford, MA, with the help of Joseph Plati, Power of Attorney, pro se.

Karen Marie Groen, United States Department of Justice, Washington, DC, with whom was John DiCicco, Principle Deputy Assistant Attorney General, Steven I. Frahm, Section Chief, and G. Robson Stewart, Assistant Section Chief, for defendant.

## OPINION

FIRESTONE, Judge.

Irene A. Plati ("Ms. Plati"), the *pro se* plaintiff in this case, through her son and attorney-in-fact, Joseph G. Plati ("Mr. Plati"), seeks a refund of $2751 in tax that she paid through withholding for tax year 2004. The Internal Revenue Service ("IRS") denied the plaintiff's claim for a refund on the grounds that she had forfeited her refund by filing her return and refund claim more than three years after she had paid the tax, plus extensions, pursuant to Internal Revenue Code ("I.R.C.") § 6511(b)(2)(A). The plaintiff contends that the IRS improperly denied her claim for a refund, arguing that the three-year "look-back" period should have been suspended because she is and was "financially disabled" during this period.[1] The defendant ("government") has moved to dismiss the plaintiff's complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"), arguing that Ms. Plati is not entitled to a suspension of the look-back period because Mr. Plati, her son, had a power of attorney and was authorized to act on her behalf during the relevant time period.[2] The defendant further argues that Ms. Plati also has not met the regulatory requirements for showing financial disability.

For the reasons that follow, the court agrees with the government that the plaintiff was not financially disabled and thus the plaintiff's refund claim came outside the look-back period. Accordingly, the government's Motion to Dismiss is **GRANTED.**

## I. BACKGROUND

The following undisputed jurisdictional facts are taken from the complaint and exhibits to the government's Motion to Dismiss.[3]

### A. Power of Attorney

On August 7, 2004, the plaintiff executed a notarized durable power of attorney, in which she authorized her son, Joseph G. Plati, to serve as her "attorney-in-fact." Compl. Attach. 2. In this document, Ms. Plati empowered her son:

> to pay my debts; to sue upon, defend, compromise, or adjust any controversies in which I may be interested, and to act in my name and stead in any complaints, proceedings, or suits with all the power I would possess if personally present ... to prepare, sign and file all tax returns, local, state, federal and foreign; to represent me before the Internal Revenue Service or before any other governmental agency for any purpose....

*Id.* The document further states that it is "intended to constitute a Uniform Durable

---

1. The Internal Revenue Code sets forth the rules regarding financial disability:

    (1) In general.—In the case of an individual, the running of the periods specified in subsections (a), (b), and (c) shall be suspended during any period of such individual's life that such individual is financially disabled.
    (2) Financially disabled.—
    (A) In general.—For purposes of paragraph (1), an individual is financially disabled if such individual is unable to manage his financial affairs by reason of a medically determinable physical or mental impairment of the individual which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. An individual shall not be considered to have such an impairment unless proof of the existence thereof is furnished in such form and manner as the Secretary may require.
    I.R.C. § 6511(h).

2. Under I.R.C. § 6511(h), a taxpayer "shall not be treated as financially disabled during any period that such individual's spouse or any other person is authorized to act on behalf of such individual in financial matters." I.R.C. § 6511(h)(2)(B).

3. The plaintiff has not challenged the government's factual assertions, which are based on documents from the plaintiff's IRS record. *See* Pl.'s Resp.

Power of Attorney pursuant to Chapter 201B of the Massachusetts General Laws which shall not be affected by any subsequent disability or incapacity to which I may become subject." *Id.* Further:

> If Joseph G. Plati fails or ceases to serve for any reason whatsoever as my said Attorney, or if he shall be temporarily unavailable to exercise the powers and authority granted herein, I do hereby designate and appoint my daughter, Elizabeth I. Malvin, now of Wakefield, Massachusetts, to serve in his place as my successor or substitute Attorney, hereby conferring upon her as my successor or substitute Attorney all powers and authority hereinbefore and/or hereinafter conferred upon my original Attorney as named herein.

*Id.*

### B. Interactions with the IRS Regarding Tax Year 2004

The IRS withheld $2820 in individual income tax from Ms. Plati for tax year 2004. *See* Def.'s Ex. 2. The plaintiff, through her CPA and return-preparer Robert L. O'Neil, requested and received an extension of time to file her 2004 tax return. Def.'s Ex. 1. The plaintiff's 2004 Form 4340, Certificate of Assessments, Payments, and Other Specified Matters, indicates that this request was filed on August 15, 2005, and the IRS granted a six-month extension of time for filing the tax return, extending the due date to October 15, 2005. Def.'s Ex. 2. This same Form 4340 also shows that Ms. Plati's Form 1040A individual income tax return for tax year 2004 was filed on April 2, 2009, at which time the IRS assessed $69 in tax reported therein. Def.'s Exs. 2, 3. The return reports an overpayment of $2751 (the difference between the $2820 in tax withheld and the $69 in tax due), and requests a refund of that amount. Def.'s Ex. 3.

The Form 4340 indicates that the IRS denied the plaintiff's request for a refund on June 1, 2009 and denied her appeal on December 20, 2010.[4] Def.'s Ex. 2. In support of the appeal, the plaintiff apparently provided a letter, dated July 12, 2010, from Mr. O'Neil, the CPA who had prepared her 2004 tax return. In this letter, Mr. O'Neil stated:

> I can attest that due to her inexperience and such a long string of medical issues from 2002 to the present, the overall affect [sic] on Mrs. Plati was such that she did not and does not have the financial ability to manage her financial affairs. Through the years, with two surgeries and other medical followup procedures, I have seen Mrs. Plati's health become increasingly comprised [sic]. She is totally confused in trying to handle her affairs. Because of her inability to provide her tax materials in a timely basis, tax extensions had to always be filed for her. In addition, she's also had a major problem coming up with the necessary tax materials to prepare her return.
>
> This was the case with her 2004 return. Many attempts by my office to get Mrs. Plati to provide us with her tax information went unanswered. It was evident to me that she was overwhelmed and confused in trying to handle her financial affairs.

Def.'s Ex. 4.

On November 17, 2010, the IRS Appeals Office denied the plaintiff's appeal, stating:

> Under the provisions of Internal Revenue Code Section 6511, a taxpayer forfeits his or her refund when he or she files a return more than 3 years after the due date, including extensions.[5] You filed your 2004 U.S. Individual Income Tax return on April 2, 2009.[ ] Assuming no extension was filed for 2004, the last day to file and receive a refund for the 2004 tax year was

---

4. The November 17, 2010 letter from the IRS Appeals Office refers to a letter denying the plaintiff's claim "which the Andover IRS Campus mailed to you on May 18, 2009." Compl. Attach. 1. It appears that this May 18, 2009 letter corresponds to the June 1, 2009 "claim disallowed" notation on the plaintiff's Form 4340, and the November 17, 2010 letter corresponds to the December 20, 2010 "claim disallowed" notation.

5. I.R.C. § 6511 provides in relevant part, "the amount of the credit or refund shall not exceed the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return." I.R.C. § 6511(b)(2)(A).

April 15, 2008. Since you did file a six (6) month extension, the last day to file and claim the refund for the 2004 tax year was October 15, 2008.

In instances where it is determined that the taxpayer is financially disabled, the period of limitation for claiming a refund may be suspended. An individual is financially disabled if such individual is unable to manage his financial affairs by reason of a medically determinable physical or mental impairment of the individual which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[6] You have provided proof of the existence of a medical condition as required.[7] However, there is an exception to this provision of the Internal Revenue Code where an individual has a guardian or power of attorney, etc. An individual shall not be treated as financially disabled during any period that such individual's spouse or any other person is authorized to act on behalf of such individual in financial matters.[8] Your son, Joseph G. Plati, has furnished evidence indicating that he has been acting as your representative since August 7, 2004. Therefore, you do not meet the criteria for financial disability, and your claim for refund is disallowed.

Compl. Attach. 1.

### C. Present Complaint

Ms. Plati filed her complaint in this court on March 15, 2011. Ms. Plati, through her

---

6. This language tracks I.R.C. § 6511(h), which, as noted above, provides:

(1) In general.—In the case of an individual, the running of the periods specified in subsections (a), (b), and (c) shall be suspended during any period of such individual's life that such individual is financially disabled.

(2) Financially disabled.—

(A) In general.—For purposes of paragraph (1), an individual is financially disabled if such individual is unable to manage his financial affairs by reason of a medically determinable physical or mental impairment of the individual which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. An individual shall not be considered to have such an impairment unless proof of the existence thereof is furnished in such form and manner as the Secretary may require.

I.R.C. § 6511(h).

7. Section 4 of Revenue Procedure 99–21 describes the information that is required under I.R.C. § 6511(h)(2)(A) to request a suspension of the periods for claiming a refund of tax due to a taxpayer's financial disability:

Unless otherwise provided in IRS forms and instructions, the following statements are to be submitted with a claim for credit or refund of tax to claim financial disability for purposes of § 6511(h).

(1) a written statement by a physician (as defined in § 1861(r)(1) of the Social Security Act, 42 U.S.C. § 1395x(r)), qualified to make the determination, that sets forth:

(a) the name and a description of the taxpayer's physical or mental impairment;

(b) the physician's medical opinion that the physical or mental impairment prevented the taxpayer from managing the taxpayer's financial affairs;

(c) the physician's medical opinion that the physical or mental impairment was or can be expected to result in death, or that it has lasted (or can be expected to last) for a continuous period of not less than 12 months;

(d) to the best of the physician's knowledge, the specific time period during which the taxpayer was prevented by such physical or mental impairment from managing the taxpayer's financial affairs; and

(e) the following certification, signed by the physician: I hereby certify that, to the best of my knowledge and belief, the above representations are true, correct, and complete.

(2) A written statement by the person signing the claim for credit or refund that no person, including the taxpayer's spouse, was authorized to act on behalf of the taxpayer in financial matters during the period described in paragraph (1)(d) of this section. Alternatively, if a person was authorized to act on behalf of the taxpayer in financial matters during any part of the period described in paragraph (1)(d), the beginning and ending dates of the period of time the person was so authorized.

Rev. Proc. 99–21 § 4. While the IRS letter states, "You have provided proof of the existence of a medical condition as required," it is unclear from the record whether anyone submitted these two statements that are required by Revenue Procedure 99–21 to claim financial disability.

8. I.R.C. § 6511(h) also provides this language, stating, "Exception where individual has guardian, etc.—An individual shall not be treated as financially disabled during any period that such individual's spouse or any other person is authorized to act on behalf of such individual in financial matters." I.R.C. § 6511(h)(2)(B); *see also* Rev. Proc. 99–21 § 2.02.

representative, Mr. Plati, claims that the IRS denial of her request for a refund was incorrect, "because they ruled that [Mr. Plati] had authority and control over [Ms. Plati's] financial affairs—when [Mr. Plati] did not." Compl. ¶ 4. In support of the claim, the plaintiff produced numerous electric bills for Ms. Plati's address from 2010 and 2011, which show that certain months' bills went unpaid. Regarding these bills, the complaint states, in part:

> This bill [covering the December 10, 2010 to January 7, 2011 billing period] shows that she insists *on keeping control* and paying her own bills. The bills go to her address. Too often, with her dementia, she hides these monthly bills when I try to pay them on time. Please note, she finally took help to pay her September, October, November, and December 2010 electric bill in January 2011.

Compl. ¶ 5 (emphasis in original). The complaint also alleges that on three occasions Mr. Plati set up visiting homemaker services for Ms. Plati, which Ms. Plati then refused, and that Ms. Plati refused to transfer ownership of her house to Mr. Plati until 2007, six years after she was advised to do so by the family's attorney. *Id.*, Attachs. 5, 6. The plaintiff argues that these documents prove that Mr. Plati was prevented from "having control and authority over her affairs, as power of attorney," and thus Ms. Plati meets the financial disability criteria that entitle her to a suspension of the time limit on recovery of overpayments.

The defendant has moved to dismiss the complaint for lack of subject matter jurisdiction, arguing that the time limit for recovering an overpayment of tax is jurisdictional and that the plaintiff does not qualify for the financial disability exception to this time limit because Mr. Plati was authorized to act on her behalf in financial matters during all relevant times.

## II. DISCUSSION

### A. Standard of Review

The plaintiff bears the burden of establishing subject matter jurisdiction, *Alder Terrace, Inc. v. United States,* 161 F.3d 1372, 1377 (Fed.Cir.1998) (citing *McNutt v. Gen.*

*Motors,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)), and must do so by a preponderance of the evidence, *Reynolds v. Army & Air Force Exchange Service,* 846 F.2d 746, 748 (Fed.Cir.1988). Further, Congress's waivers of sovereign immunity "must be strictly construed in favor of the sovereign." *Orff v. United States,* 545 U.S. 596, 601–02, 125 S.Ct. 2606, 162 L.Ed.2d 544 (2005). Because jurisdiction is a threshold matter, a case can proceed no further if a court lacks jurisdiction to hear it. *See Arbaugh v. Y & H Corp.,* 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." (citation omitted)); *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). *See generally John R. Sand & Gravel v. United States,* 552 U.S. 130, 128 S.Ct. 750, 169 L.Ed.2d 591 (2008). It is well settled that when the court considers a motion to dismiss for lack of subject matter jurisdiction, it may look beyond the pleadings and "inquire into jurisdictional facts" to determine whether jurisdiction exists. *Rocovich v. United States,* 933 F.2d 991, 993 (Fed.Cir.1991).

While *pro se* plaintiffs are held to a lower standard of pleading than those represented by counsel, *see Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (holding that *pro se* complaints should be held to "less stringent standards than formal pleadings drafted by lawyers" (quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972))), all those seeking to invoke the court's subject matter jurisdiction ultimately retain the burden of establishing that the jurisdictional requirements are met, *Keener v. United States,* 551 F.3d 1358, 1361 (Fed.Cir.2009) (citing *Rocovich,* 933 F.2d at 993).

### B. Despite Mr. Plati's Difficulties in Managing Ms. Plati's Financial Matters, His Authority to Do So Renders Ms. Plati Ineligible for the Financial Disability Exception from the I.R.C. § 6511(b)(2)(A) Look–Back Rule.

The government contends that the plaintiff's claim is jurisdictionally barred because

she seeks a refund of taxes that were paid beyond time period prescribed by the "look-back" rule in I.R.C. § 6511(b)(2)(A). The government argues that Ms. Plati does not meet the requirements of financial disability, which would entitle her to a suspension of the look-back period, because Mr. Plati, as attorney-in-fact for Ms. Plati, was authorized to act for her in her financial affairs during the relevant time period. The government contends that it is not relevant whether Mr. Plati was successful in managing Ms. Plati's financial matters, only whether he was authorized to do so.

The plaintiff, in response, argues that this court ordinarily has jurisdiction to hear tax refund claims and that the court should exercise this jurisdiction in this case. She points to the November 17, 2010 letter from the IRS Appeals Office denying Ms. Plati's refund claim, which states, "You may pursue this matter further by filing suit in either the United States District Court or the United States Court of Federal Claims." Def.'s Resp.; Compl. Attach. 1. The plaintiff also relies on the Court of Federal Claims website, which indicates that this court possesses concurrent jurisdiction with the United States district courts over tax refund suits.

The government agrees with the plaintiff that this court possesses jurisdiction over tax refund suits generally, but contends that this particular plaintiff has not met the jurisdictional prerequisites for filing a claim for refund. The government asserts that despite any implication by the IRS to the contrary, the IRS cannot create subject matter jurisdiction where it does not otherwise exist. The court agrees with the government.

■ The plaintiff is correct that the United States has consented to be sued in this court regarding the overpayments of taxes. *See* 28 U.S.C. § 1346(a)(1). However, that statute is merely a "general jurisdictional statement" that does not in itself confer jurisdiction upon this court over any particular claim. *Dumont v. United States*, 345 Fed. Appx. 586, 592 (Fed.Cir.2009), *aff'g* 85 Fed. Cl. 425 (2009). Rather, jurisdiction over tax refund suits arises under the Tucker Act, 28 U.S.C. § 1491(a)(1), which itself "confers jurisdiction only where the plaintiff identifies

an accompanying substantive claim that 'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" *Dumont*, 345 Fed.Appx. at 592 (quoting *United States v. Mitchell*, 463 U.S. 206, 217, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983)). In this case, as in *Dumont*, to invoke this court's tax refund jurisdiction, Ms. Plati's substantive claim must fall under I.R.C. § 7422(a), which contains the specific waiver of sovereign immunity for tax refunds. *See Dumont*, 345 Fed.Appx. at 592. That section provides:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, *until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.*

I.R.C. § 7422(a) (emphasis added).

The court finds that Ms. Plati's complaint in this court does not fall within I.R.C. § 7422(a) because it fails to meet the jurisdictional thresholds of a refund claim being "duly filed" with the IRS, which are listed, in part, in I.R.C. § 6511(b)(2)(A). *See Dumont*, 345 Fed.Appx. at 592; *Dumont*, 85 Fed.Cl. at 429 n. 5 (citing *United States v. Clintwood Elkhorn Min. Co.*, 553 U.S. 1, 128 S.Ct. 1511, 170 L.Ed.2d 392 (2008); *United States v. Brockamp*, 519 U.S. 347, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997)). As noted above, I.R.C. § 6511 provides in relevant part, "the amount of the credit or refund shall not exceed the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return." I.R.C. § 6511(b)(2)(A). In 2005, the IRS granted Ms. Plati a six-month extension for filing her 2004 tax return; thus Ms. Plati's look-back period is three years plus six months. Ms. Plati filed her claim for a refund, in the form of her Form 1040A individ-

ual income tax return, on April 2, 2009.[9] Thus, under the provisions of I.R.C. § 6511(b)(2)(A), the amount of the refund to which Ms. Plati may be entitled may not exceed the portion of the tax paid before October 2, 2005, three years plus six months immediately preceding the filing of her claim for a refund on April 2, 2009. Ms. Plati's income tax for tax year 2004—which was withheld from payments made to her—is deemed to have been paid on April 15, 2005. *See* I.R.C. § 6513(b)(1) ("Any tax actually deducted and withheld at the source during any calendar year ... shall, in respect of the recipient of the income, be deemed to have been paid by him on the 15th day of the fourth month following the close of his taxable year...."). Because Ms. Plati's payments for tax year 2004 were not within the three years and six months preceding her claim for a refund (that is, they did not occur after October 2, 2005), she has not fulfilled the requisites for claiming a refund for that tax year absent a suspension of the look-back period.

■ Ms. Plati, of course, claims that her refund claim is exempt from the substantive limitation imposed by I.R.C. § 6511(b)(2)(A), arguing that she is entitled to benefit from the provision of I.R.C. § 6511 that suspends the running of the look-back period "during any period of such individual's life that such individual is financially disabled." I.R.C. § 6511(h)(1).[10] This I.R.C. provision on financial disability explicitly states, however, "An individual *shall not be treated as financially disabled during any period that such individual's spouse or any other person is authorized to act on behalf of such individual in financial matters.*" I.R.C. § 6511(h)(2)(B) (emphasis added); *see also* Rev. Proc. 99–21 § 2.02. While Ms. Plati may have been "unable to manage [her] affairs by reason of a medically determinable physical or mental impairment" such that she would otherwise qualify for a suspension of the § 6511(b)(2)(A) look-back period, the fact that Mr. Plati was at all relevant times "authorized to act on behalf of [Ms. Plati] in financial matters" is fatal to her claim of financial disability. *See* I.R.C. § 6511(h)(2)(B). The durable power of attorney that Ms. Plati executed on August 7, 2004 authorized Mr. Plati to serve as her attorney-in-fact, and specifically enumerated his power to prepare and file her tax returns and to represent Ms. Plati before the IRS. Compl. Attach. 2. In this document, Ms. Plati empowered Mr. Plati:

> to pay my debts; to sue upon, defend, compromise, or adjust any controversies in which I may be interested, and to act in my name and stead in any complaints, proceedings, or suits with all the power I would possess if personally present ... *to prepare, sign and file all tax returns, local, state, federal and foreign; to represent me before the Internal Revenue Service or before any other governmental agency for any purpose ....*

*Id.* (emphasis added).

Mr. Plati acknowledges this agreement and his legal status as Ms. Plati's attorney-in-fact, but claims that he did not have "authority and control over her financial affairs," Compl. ¶ 4, because Ms. Plati "insists *on keeping control* " and "did not let [him] have control or authority to act for her" in numerous contexts, Compl. ¶ 5 (emphasis in original). As this court has previously, found, however, it is a person's authority to manage a taxpayer's financial matters, and not the exercise of that authority, that is relevant to determining whether a taxpayer may claim financial disability:

> medically determinable physical or mental impairment of the individual which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. An individual shall not be considered to have such an impairment unless proof of the existence thereof is furnished in such form and manner as the Secretary may require.
> I.R.C. § 6511(h)(2)(A).

---

9. For purposes of I.R.C. § 6511, "A properly executed individual ... income tax return ... shall constitute a claim for refund ... for the amount of overpayment disclosed by such return...." Treas. Reg. § 301.6402–3(a)(5).

10. As noted above, this section defines financial disability:

> For purposes of paragraph (1), an individual is financially disabled if such individual is unable to manage his financial affairs by reason of a

[U]nder [I.R.C.] § 6511(h)(2)(B), the relevant question is whether any person was "*authorized* to act on behalf of [the taxpayer] in financial matters," (emphasis added), not whether the authorized person actually took such action. The statute is not concerned with whether the taxpayer's affairs were actually managed, nor whether they were managed competently, but rather whether someone had been given the authority to act. One may certainly possess the authority conferred by a power of attorney without implementing, exercising, or acting on that power.

*Bova v. United States*, 80 Fed.Cl. 449, 458 n. 12 (2008) (holding that a taxpayer's alleged verbal agreement with her accountant to not act pursuant to the accountant's power of attorney had no bearing on the applicability of 26 U.S.C. § 6511(h)(2)(B)). Here, as in *Bova*, whether any person was "*authorized* to act on behalf of [Ms. Plati] in financial matters" is the sole question relevant to whether Ms. Plati is disqualified from taking refuge in the suspension of the look-back period because of financial disability. The plaintiff does not dispute that Mr. Plati was indeed *authorized* to act for his mother, Ms. Plati, in her financial matters. Whether Mr. Plati had difficulty in doing so does not change the application of the plain language of the statute.[11]

Because an individual was authorized to act on Ms. Plati's behalf with regard to financial matters during the relevant time period, I.R.C. § 6511(h)(2)(B) mandates that Ms. Plati not be treated as financially disabled during this period. Thus, the ordinary three-year look-back period in I.R.C. § 6511(b)(2)(A) must apply.[12] Because Ms. Plati's tax payments for 2004 occurred out-side the look-back period, the court finds that Ms. Plati's complaint in this court does not meet the jurisdictional thresholds to bring a refund claim under I.R.C. § 7422(a). *See Clintwood Elkhorn*, 553 U.S. 1, 128 S.Ct. 1511 (taxpayer suing for refund may not proceed under the Tucker Act unless meeting the I.R.C. § 6511 time limits for refund actions). For this reason, the court lacks subject matter jurisdiction over the plaintiff's claim, and the government's motion to dismiss pursuant to RCFC 12(b)(1) must be granted.

## III. CONCLUSION

For the above-stated reasons, the government's Motion to Dismiss for lack of subject-matter jurisdiction is **GRANTED**. The clerk is directed to enter judgment accordingly. Each party is to bear its own costs.

**IT IS SO ORDERED.**

---

11. Further, to the extent that Mr. Plati argues that he was in fact unable to serve as Ms. Plati's attorney-in-fact, the durable power of attorney appoints Ms. Plati's daughter as substitute attorney in the case of such contingency:

If Joseph G. Plati fails or ceases to serve for any reason whatsoever as my said Attorney, or if he shall be temporarily unavailable to exercise the powers and authority granted herein, I do hereby designate and appoint my daughter, Elizabeth I. Malvin, now of Wakefield, Massachusetts, to serve in his place as my successor or substitute Attorney, hereby conferring upon her as my successor or substitute Attorney all powers and authority hereinbefore and/or hereinafter conferred upon my original Attorney as named herein.

12. Because the court concludes that Ms. Plati does not meet the requirements of financial disability for this reason, the court does not reach the government's alternative argument that Ms. Plati failed to submit the specific documentation required to establish financial disability. *See* Rev. Proc. 99–21.